STATE OF CONNECTICUT *v.* ANNETTE WEBLEY
(6006)

O'CONNELL, STOUGHTON and NORCOTT, Js.

Argued October 18—decision released December 20, 1988

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant elected to be tried to a jury on a charge of assault in the first degree in violation of General Statutes § 53a-59. She was convicted of the lesser included offense of assault in the second degree, General Statutes § 53a-60, and appeals from the judgment rendered on the conviction. She claims that the trial court erred when it (1) refused to instruct the jury on the issue of self-defense,[1] (2) excluded evi-

---

[1] General Statutes § 53a-19 provides: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such

dence of the victim's character and reputation for violence, (3) excluded certain out-of-court statements as hearsay, (4) made improper remarks that substantially impaired the defendant's right to a fair trial, (5) instructed the jury in a manner that deprived the defendant of a unanimous jury verdict, (6) instructed the jury on the definition of use of a deadly weapon, and (7) allowed the state to impeach two defense witnesses by questioning their pretrial silence.[2] We find error.

There was evidence at the trial from which the jury might reasonably have found the following facts. On April 30, 1986, the defendant, Annette Webley, visited her boyfriend, Ray Moses, at a halfway house at which he was living. Upon arriving there, the defendant found Patrice Nevers seated on Moses's lap. The defendant became upset, started yelling, and grabbed some gold chains from Moses's neck. The defendant and Nevers started to struggle but were pulled apart. The defendant left, and about one-half hour later Nevers and two friends went to the defendant's apartment in an attempt to get the chains back. In front of the defendant's apartment, the defendant and her sister were confronted by Nevers who told the defendant that Nevers and Moses were going to get an apartment together. The defendant tried to get away but Nevers pursued

other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

[2] The defendant also raises myriad claims and arguments by way of footnotes in her brief. This practice violates Practice Book § 4065 (d). See *State v. Reddick*, 15 Conn. App. 342, 343, 545 A.2d 1109 (1988). Moreover, we will not allow the use of extended footnotes to defeat the limitations imposed by Practice Book §§ 4071 and 2006. Consequently, we will not review claims and arguments thus raised.

her until she was backed up against a parked car. The defendant slapped Nevers's face and they started to fight. Nevers grabbed the defendant's neck and started to choke her. They both fell to the ground with Nevers on top of the defendant and still choking her. Nevers first became aware that the defendant had a knife when Nevers's face was cut. She then yelled that the defendant had a knife and her two friends stopped the fight. One of them grabbed the defendant's knife and threw it down the street. Once Nevers and the defendant were separated, Nevers went to her car and grabbed a baseball bat and chased the defendant until the defendant jumped into her sister's car.

Nevers was taken to Bridgeport Hospital where she remained for six days; she was treated for stab wounds to the neck, face, and abdomen. The stomach wound was six to eight inches deep and resulted in a lacerated spleen. Michael Daiuto, a physician, testified that these injuries created a serious impairment to Nevers's health.

The defendant's first claim is that she was entitled to a charge on self-defense, and that the trial court erred in refusing to give such a charge. We note that a charge on self-defense was requested. The state claims that the trial court did not err because there was insufficient evidence presented at trial to warrant a self-defense charge.

Self-defense, pursuant to General Statutes §§ 53a-19 and 53a-16,[3] raises a defense that the charged offense was justified under the circumstances. Consequently, the state has "the burden of disproving such defense beyond a reasonable doubt." General Statutes § 53a-12

---

[3] General Statutes § 53a-16 provides: "JUSTIFICATION AS A DEFENSE. In any prosecution for an offense, justification as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense."

(a).[4] "[W]hen there is evidence indicating the availability of a recognized defense, a defendant is entitled as a matter of law to a theory of defense instruction." *State v. Harris,* 189 Conn. 268, 274, 455 A.2d 342 (1983). In reviewing the defendant's claim that she was entitled to this instruction, we look at the evidence in the light most favorable to the defendant's claim. *State v. Fuller,* 199 Conn. 273, 279, 506 A.2d 556 (1986); *State v. Folson,* 10 Conn. App. 643, 647, 525 A.2d 126 (1987).

In reviewing the evidence presented, we conclude that the defendant's testimony provided a sufficient basis for a claim of self-defense. At trial, the defendant testified that the victim, Nevers, hit her in the face and grabbed her by the throat. The defendant testified that she was afraid of Nevers and concerned that Nevers would hurt her. She claimed that she had taken the knife out of her pocketbook to protect herself. The state claims that an accused is entitled to a self-defense instruction only after the accused admits committing the offense charged, and that in this case the accused never admitted stabbing the victim. In support of this claim, the state interprets the cases of *State v. Rosado,* 178 Conn. 704, 707–708, 425 A.2d 108 (1979), and *State v. Cassino,* 188 Conn. 237, 242, 449 A.2d 154 (1982), to mean that the defendant must admit the crime in order to be entitled to a self-defense charge. The holdings in *Cassino* and *Rosado* were clarified, however, in the case of *State v. Harris,* supra, 274 n.4, in which the Supreme Court noted that the *Cassino* decision was based upon the total lack of evidence concerning self-defense, and not upon the fact that the defendant had failed to admit committing the crime. We have rejected

---

[4] General Statutes § 53a-12 provides in pertinent part: "DEFENSES; BURDEN OF PROOF. (a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt."

the claim that *State* v. *Rosado* means that a defendant must admit the crime in order to receive a self-defense charge. See *State* v. *Folson,* supra, 649.

If there is any foundation in the evidence for any theory of defense, the defendant is entitled to an instruction relating to it. *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956), cited in *State* v. *Fuller,* supra, 278; see also *State* v. *Folson,* supra, 646. Accordingly, here, the defendant's testimony that Nevers hit her and grabbed her by the throat, and that she was frightened and was attempting to defend herself against assault by Nevers, was sufficient to entitle her to an instruction on self-defense. Whether this evidence was sufficient to find that the defendant was justified pursuant to General Statutes § 53a-19 was a question for the jury. The trial court erred in refusing to instruct the jury on the issue of self-defense and a new trial is necessary.

The defendant's second and related claim is that the trial court erred in excluding evidence of the victim's reputation and character for violence. At trial, the defendant sought to testify as to Nevers's reputation and character for violence. The state objected, and the defendant argued that such testimony was necessary in order to show the reasonableness of her belief that the victim was armed and would harm her. The trial court refused to allow the testimony on the ground that there was no foundation for it because the defendant had not shown that it was reasonable for her to believe that she was in danger of serious physical harm. The trial court concluded that the evidence was inadmissible because it was a collateral matter. The trial court did note that if it later determined that the defendant had put forth sufficient evidence of self-defense it would reconsider its rulings as to testimony concerning the victim's character and reputation for violence.

"Ordinarily, upon a showing of a proper foundation for a claim of self-defense, the 'defendant may introduce evidence of the violent character of the victim. . . . *State* v. *Miranda,* 176 Conn. 107, 405 A.2d 622 (1978).' *State* v. *Delgado,* 8 Conn. App. 273, 286, 513 A.2d 701 (1986)." *State* v. *Delgado,* 13 Conn. App. 139, 149, 535 A.2d 371 (1987). "A victim's violent character may be proven by reputation or opinion evidence or by showing convictions for crimes of violence. [*State* v. *Miranda,* supra]. It may not however be proven by evidence of other specific acts. Id., 112–13." *State* v. *Knighton,* 7 Conn. App. 223, 229, 508 A.2d 772 (1986). Accordingly, the trial court erred insofar as it refused to allow the defendant to give testimony concerning the victim's reputation and character for violence, but it did not err in refusing to allow her to prove this by evidence of other specific acts of violence. See *State* v. *Gooch,* 186 Conn. 17, 21, 438 A.2d 867 (1982); *State* v. *Martin,* 170 Conn. 161, 164–65, 365 A.2d 104 (1976); *State* v. *Knighton,* supra, 229.

Our determination to order a new trial makes it unnecessary to address the defendant's remaining claims because it is unlikely that the same issues will arise at another trial.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.