IN RE JESUS C.*
(8028)

BORDEN, DALY and O'CONNELL, Js.

Argued January 17—decision released May 4, 1990

*Mary Miller Haselkamp,* deputy assistant public defender, with whom was *Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open 'for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *John O'Meara,* deputy assistant state's attorney, *Bernard D. Kennedy,* deputy assistant state's attorney, and *Harry Weller,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of adjudication as a youthful offender, pursuant to General Statutes § 54-76g, by virtue of his commission of the crime of using a motor vehicle without the owner's permission in violation of General Statutes § 53a-119b. He claims that the trial court erred (1) in refusing to strike the testimony of two police officers, (2) in admitting a police report into evidence, and (3) in denying the defendant's motion to recuse. We find error.

The following facts are relevant to this appeal. On September 27, 1988, New Haven police officer Sal Rivera noticed three individuals in or around a parked car. Rivera observed that their attention was focused on the car's steering column. Shortly thereafter, the three individuals became aware of Rivera's presence and took flight, running down the street and between some buildings. Suspecting that the car might be stolen, Rivera gave chase on foot. During the pursuit, he used his portable police radio to transmit a description of the individuals and what had just transpired.

Rivera's broadcast was heard by Officer Anthony DeLucia, who was in a patrol car about two blocks from the scene. Just after hearing the report, DeLucia saw three individuals run across the street in front of him. DeLucia radioed that he had Rivera's subjects in sight, and then left his car to pursue them on foot. He soon located the defendant in the kitchen of a nearby home. Rivera arrived a few moments later, identified the

defendant as one of the persons who had run from him, and placed him under arrest. A second suspect was found hiding under the stairs in the basement, but the third was never found.

## I

The defendant's first claim is that the trial court erred in refusing to strike the testimony of Rivera and DeLucia because of the state's failure to produce the tapes of the officers' radio broadcasts. This claim arises in the following context. Shortly after entering a plea of not guilty, the defendant filed a discovery request seeking, inter alia, copies of all witness statements relevant to his case. Following each officer's trial testimony, the defendant moved, pursuant to Practice Book § 752,[1] for the production of the broadcast tapes on the grounds that they were statements within the meaning of Practice Book § 749.[2] The recordings were unavailable, however, because the New Haven police department had erased and reused the tapes thirty-seven days after the defendant's arrest and a few days prior to the defendant's pretrial request. The trial court denied the defendant's motion to strike.

This is not the first occasion where, on appeal, Connecticut courts have been required to consider the impli-

---

[1] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[2] Practice Book § 749 provides: "The term 'statement' as used in Sec. 748 means:

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

cations of the New Haven police department's failure to preserve tapes of witness statements. See, e.g., *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990); *State* v. *Kelly,* 208 Conn. 365, 545 A.2d 1048 (1988); *State* v. *Santangelo,* 205 Conn. 578, 534 A.2d 1175 (1987); *State* v. *Mullings,* 202 Conn. 1, 519 A.2d 58 (1987); *State* v. *Myers,* 193 Conn. 457, 479 A.2d 199 (1984); *State* v. *Shaw,* 185 Conn. 372, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982); *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815, aff'd, 212 Conn. 6, 562 A.2d 470 (1989); *State* v. *Sims,* 12 Conn. App. 239, 530 A.2d 1069 (1987), cert. denied, 206 Conn. 801, 535 A.2d 1315 (1988). It is settled that the state cannot avoid its obligations under the rules of practice governing discovery by destroying discoverable material prior to a defendant's motion for production, and, in appropriate circumstances, the affected testimony may be struck as a sanction for such destruction. Practice Book § 755; *State* v. *Williamson,* 212 Conn. 6, 13, 562 A.2d 470 (1989). Sanctions will not be imposed, however, if the court finds that the nonproduction of a statement is harmless. *State* v. *Williamson,* supra, 212 Conn. 6, 13.

In *State* v. *Sims,* supra, we held that police broadcast tapes were "statements" within the terms of our rules of practice. Id., 248–49. In that case, as here, the recordings had been destroyed by the reuse of the tapes prior to the request for disclosure. Id. We held there that the erasure did not require that the testimony be stricken, although we expressed serious reservations about the New Haven police department's failure to comply with judicial directives to discontinue routine erasure of tape-recorded material. Id., 249.

*Sims* was followed by our decision in *State* v. *Williamson,* supra, 14 Conn. App. 108. In *Williamson,* this court reiterated that recordings such as the one in *Sims* had to be preserved because they related "to the inves-

tigation, apprehension, and prosecution of suspects of a crime. . . ." Id., 118C n.9.[3] Since the recordings were not produced, the affected testimony had to be stricken. Id., 109.

At oral argument in this case the state argued that police broadcast tapes do not come within the ambit of our decision in *Williamson.* The state did not present this issue in its brief but instead relegated it to a vague comment in a footnote. The impropriety of raising claims and arguments in footnotes has been the subject of comment in several recent cases. See *State* v. *Ruscoe,* 212 Conn. 223, 241 n.9, 563 A.2d 267 (1989), cert. denied,     U.S.     , 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Webley,* 17 Conn. App. 200, 202 n.2, 551 A.2d 428 (1988); *State* v. *Reddick,* 15 Conn. App. 342, 343 n.1, 545 A.2d 1109, cert. denied, 209 Conn. 817, 551 A.2d 758 (1988)[4]. Moreover, even if this argument were properly raised, it would be futile. As noted above, the matter was settled in *Sims,* where we concluded that police broadcast recordings were statements within the definition of the Practice Book disclosure requirements. *State* v. *Sims,* supra, 247–50.

Turning then, to our analysis of the defendant's claim, our first task is to determine whether the erasure of the recordings was done in bad faith. " 'In the context of a § 752 violation . . . the term "bad faith" connotes a deliberate act done with intent to deprive the defense of information. *State* v. *Santangelo,* [supra, 587–88]; see also *United States* v. *Bryant,* 439 F.2d 642

---

[3] We recognize that our decision in *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815 (1989), dealt with recordings of emergency 911 telephone calls. The reasoning in *Williamson,* however, applies equally to police broadcasts, which are recorded on the same type of twenty-four hour tape.

[4] The irony that condemnation of the practice of raising arguments in footnotes is itself set forth in footnotes has not escaped the author of this opinion.

(D.C. Cir. 1971) . . .' *State* v. *Williamson,* [supra, 212 Conn. 6, 16]." *State* v. *Johnson,* supra, 168. See *State* v. *Leroux,* 18 Conn. App. 223, 228, 557 A.2d 1271 (1989). Nothing in this case indicates that the New Haven police acted maliciously or that the erasure of the tapes was directed toward this particular defendant. We conclude that the police did not act in bad faith.

Where the facts do not support a finding of bad faith, the court must balance the fault of the state in failing to make disclosable material available against any resulting prejudice to the defendant. *State* v. *Johnson,* supra, 172; *State* v. *Williamson,* supra, 212 Conn. 6, 14. Since it is undisputed that the New Haven police intentionally erased the recordings, the state has the burden of proving that the nonproduction was harmless. *State* v. *Johnson,* supra; *State* v. *Williamson,* supra, 212 Conn. 6, 18.

We now are faced with the question of what standard the state must meet. The defendant argues that because the recordings were intentionally destroyed and because his sixth amendment right to confront the witnesses against him was compromised, the state should be required to prove that erasure was harmless beyond a reasonable doubt.

In *State* v. *Williamson,* supra, 212 Conn. 6, 23, our Supreme Court stated that, under the facts of that case, a strict application of the harmless error doctrine requiring the state to prove harmlessness beyond a reasonable doubt, "would not be unwarranted." The Supreme Court noted that the destruction impinged on the defendant's constitutional right to confront the witnesses against him. Id. Furthermore, the Supreme Court was precluded, for obvious reasons, from reviewing and assessing the significance of the undisclosed material, thus preventing it from determining whether

the erasure was harmless. Id., 22, citing *State* v. *Gonzales,* 186 Conn. 426, 435, 441 A.2d 852 (1982). Despite those concerns, the Supreme Court in *Williamson,* having determined that the state failed to show that it was more probable than not that the nonproduction was harmless, found no point in holding the state to the higher standard of showing that the nonproduction was harmless beyond a reasonable doubt. *State* v. *Williamson,* supra, 212 Conn. 6, 23; see also *State* v. *Belle,* 215 Conn. 257, 265, 576 A.2d 139 (1990).

Here, we also are persuaded that the state has failed to satisfy this lesser standard, and consequently we do not decide whether the state must prove harmlessness beyond a reasonable doubt. Our analysis involves " 'a "case-by-case assessment of the [state's] culpability for the loss, together with a realistic appraisal of [the evidence's] significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the [state's] untainted proof." . . .' *United States* v. *Konefal,* 566 F. Sup. 698, 704 (N.D.N.Y. 1983) . . . ." (Citations omitted.) *State* v. *Williamson,* supra, 212 Conn. 6, 23. The state's culpability is well established. The destruction of the recordings here occurred long after our decisions in *Sims* and *Williamson* had directed that they be preserved.

We also are satisfied that the defendant was prejudiced by the nonproduction. The state's case consisted solely of the testimony of the two officers and an admittedly inaccurate and incomplete police report prepared several hours after the event. Furthermore, the defendant's version of events contrasted sharply with the state's case. He testified that he never entered the car but was instead standing on the sidewalk beside to it when Rivera appeared. Rivera, on the other hand, stated that the defendant was not only in the car but was behind the wheel before taking flight.

It is possible that the recordings would not have helped the defendant. At the same time, however, the recordings could have given the defendant the information necessary to impeach both Rivera and DeLucia. Both officers made their broadcasts while the events were unfolding and thus, presumably, the tapes of those broadcasts would have provided the "most thorough description of the incident given outside the courtroom . . . ." *State* v. *Williamson,* supra, 14 Conn. App. 108, 118C. Furthermore and most important, because we do not have the tapes before us, we cannot speculate on what they might have contained, nor can we determine that the error was harmless. *State* v. *Williamson,* supra, 212 Conn. 6, 22; *State* v. *Gonzales,* supra. We therefore conclude that the trial court erred in failing to strike the testimony of Rivera and DeLucia.

## II

The defendant next claims that the trial court erred in admitting into evidence a copy of the police report on the ground that it included inadmissible hearsay. We will consider this claim because it may occur on retrial. See *State* v. *Thurman,* 10 Conn. App. 302, 317, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). The problem arose because the individual arrested with the defendant told the police that the defendant, and not he, had stolen the car. Officer DeLucia included this information in his report.

A police report generally is admissible as a business record under General Statutes § 52-180. *State* v. *Sharpe,* 195 Conn. 651, 663, 491 A.2d 345 (1985). To qualify under this statute the report must be based entirely upon the police officer's own observations or upon information provided by an observer with a business duty to transmit such information. Id.; *D'Amato* v. *Johnston,* 140 Conn. 54, 59, 97 A.2d 893 (1953). For

example, a report prepared by an officer in charge of an accident investigation is admissible in its entirety, despite the fact that it contains information received from other officers assisting in the investigation. Such a report is not admissible, however, if it contains information furnished by a mere bystander. Information obtained from a person with no business duty to report is admissible only if it falls within some other hearsay exception. *State* v. *Sharpe,* supra, 663–64; *State* v. *Palozie,* 165 Conn. 288, 295, 334 A.2d 468 (1973). No such exception existed here. Therefore, it was error to admit the police report without redacting the inadmissible material.

We will not consider the third claim of error because it is not likely to occur on retrial.

There is error, the judgment of conviction is set aside and the case is remanded for a new trial.

In this opinion DALY, J., concurred.

BORDEN, J., dissenting and concurring. I dissent from the majority's conclusion that the state did not establish the harmlessness of the destruction of the tapes. Both Rivera and DeLucia testified at trial as to the general contents of their broadcasts. Rivera testified that he radioed a general description of the individuals. DeLucia testified that he had radioed that he observed the subjects. Indeed, it is hardly likely that they would have radioed much more in the course of their pursuit of the three individuals involved.

The majority argues that their broadcasts would have provided the longest and most thorough description of the incident given outside the courtroom. Although it is true that the tapes would have provided some description of the incident given outside the courtroom, that description can not, ipso facto, be characterized as

either long or thorough. Thus, under either the "more probable than not" or the "beyond a reasonable doubt" standard of harmlessness, I am persuaded that the destruction of the tapes could not have affected the verdict.

The majority's reliance on *State* v. *Williamson*, 212 Conn. 6, 562 A.2d 470 (1989), is misplaced. In that case, there were critical inconsistencies between the trial testimony of the witness and the transcript of the destroyed tape of her interview. Id., 24–25. Here, no such inconsistencies have been shown between Rivera's and DeLucia's testimony and the likely content of the destroyed tapes. Furthermore, in *Williamson*, the destroyed tape was of an interview with the victim in which she described the crime in detail. Thus, the tape " '*was* the longest and presumably the most thorough description of the incident given outside the courtroom' " (emphasis added); id., 25, quoting *State* v. *Williamson*, 14 Conn. App. 108, 118C, 552 A.2d 815 (1988); and would have been useful in cross-examining the victim. In my view, that cannot reasonably be said of these radio broadcasts.

I agree, however, with the majority's conclusion that the admission of the police report constituted harmful error. I concur, therefore, in the remand for a new trial.