STATE OF CONNECTICUT *v.* ROY TYSON
(8170)

SPALLONE, FOTI and LAVERY, Js.

Argued May 15—decision released August 28, 1990

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from his conviction, after a jury trial, of the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). He claims the trial court improperly

(1) failed to instruct the jury on the law of self-defense, (2) refused to strike the victim's testimony as a sanction for the state's deliberate destruction of his taped statement, and (3) refused to instruct the jury on the defendant's decision not to testify using the language he requested. We affirm the judgment of the trial court.

The victim testified at trial to the following. The defendant, Roy Tyson, and the victim, Calvin Jones, were neighbors in an apartment complex in New Haven and had known each other for about six months at the time of the assault. At about 5 p.m. on November 30, 1986, Jones was at home asleep on the living room couch when the defendant knocked at his door. Jones invited the defendant inside and then returned to his couch. As he turned to fluff his pillow, Jones saw the defendant coming at him with a carving knife. The defendant said, "Your boy is looking for me, huh?" Jones believed that statement referred to a friend's attempt to collect a debt owed by the defendant.

Jones was stabbed in his midsection and cut his hand when he attempted to grab the knife blade. The two men struggled across the living room to the front door. At one point, Jones had the defendant's back against the door and was holding the defendant's knife hand. The defendant appeared to relax slightly but when Jones relaxed his grip, the defendant again lunged at him and they fell wrestling to the floor.

The defendant grabbed a pair of pliers from a table and began to strike Jones on the top of his head. Jones backed into the kitchen. The defendant pursued him, grabbed a butter knife from the table, stabbed Jones in the head, and attempted to stab him in the throat and eyes. When Jones fell to the floor, the defendant picked up a butcher knife and again attempted to stab him. Jones averted the attack and the men engaged in a renewed struggle. The defendant suddenly disengaged and left the apartment.

After a few minutes, Jones called his girl friend's mother, telling her that he had been beaten and stabbed and needed help. The mother relayed the information and, when the girl friend and a neighbor arrived at the apartment, Jones was lying on the floor covered with blood. The neighbor immediately summoned help by dialing 911.

The defendant and the victim were both treated at a hospital that night. A doctor testified that Jones arrived bleeding profusely and in the last stages of cardiovascular shock. He had sustained between fifteen and twenty lacerations to the head, face and neck, including a laceration of the jugular vein and a blow-out fracture of his eyesocket. In addition, Jones sustained between twenty and thirty lacerations to his arms, chest, abdomen and back.

The defendant's medical records were admitted into evidence and indicated that he had sustained a small abrasion on his neck, a laceration of his left palm and a small opening of a scar from recent surgery. The records contained a notation that the defendant told the medical personnel that he was "assaulted by another." The defendant was not admitted to the hospital.

The defendant did not testify at trial but introduced medical testimony that he had undergone chest surgery seven weeks prior to the incident and had been advised to avoid exertions. An officer of the New Haven police department testified that he had taken a statement from the defendant at the hospital, but the content of the statement was excluded as inadmissible hearsay. The defendant was convicted of first degree assault, and this appeal followed.

I

In his initial claim, the defendant contends that the trial court should have instructed the jury on the

defense of justification. The defendant raises two interrelated claims regarding self-defense: first, that the trial court improperly excluded a statement that would have helped establish his claim of self-defense, and second, that even without the statement there was sufficient evidence of self-defense to permit the jury to consider this issue. We disagree.

Self-defense is an expressly recognized justification defense defined in General Statutes § 53a-19.[1] A defendant is entitled as a matter of law to an instruction on a theory of defense only if there is evidence indicating that the defense is applicable. *State* v. *Belle,* 215 Conn. 257, 273, 576 A.2d 139 (1990); *State* v. *Webley,* 17 Conn. App. 200, 204, 551 A.2d 428 (1988). Once the defense is properly raised, the jury must be instructed that the state bears the burden of disproving it beyond a reasonable doubt. *State* v. *Cassino,* 188 Conn. 237, 241, 449 A.2d 154 (1982).

---

[1] General Statutes § 53a-19 provides in pertinent part: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor . . . .

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

The narrow issue before us, therefore, is whether the defendant presented sufficient evidence to "raise" the issue at trial. The threshold is not high. The instruction must be given if there is *any* foundation in the evidence for the defense theory; *State* v. *Belle,* supra, 275; and we must view the evidence in the light most favorable to the defendant. *State* v. *Havican,* 213 Conn. 593, 595, 569 A.2d 1089 (1990); *State* v. *Cassino,* supra, 239. The jury, however, must have before it enough evidence to raise a question of fact without resorting to guess and speculation. *State* v. *Belle,* supra.

## A

The defendant claims that the wrongful exclusion from evidence of his hospital statement to the police prevented him from introducing the foundation for his self-defense claim. The statement contained the defendant's account of the events of the evening of November 30, 1986, in which he asserted that Jones had threatened him and then attacked him with a knife. This taped statement was transcribed the next day and the defendant swore to the truth of it and signed the transcript.

Because the defendant chose to exercise his constitutional right not to testify, the only way to put his account of the assault before the jury was to introduce this statement into evidence. The defendant conceded that the statement was hearsay but offered five theories in support of its admissibility: (1) as a party admission; (2) to show state of mind; (3) as a statement of bodily condition; (4) under the residual hearsay exception; and (5) to show the police officer's bias. We agree with the trial court that none of those exceptions is applicable here.

Trial court rulings on the admissibility of evidence are accorded great deference and will be disturbed on

appeal only on a showing of a clear abuse of discretion. *State* v. *Erhardt,* 17 Conn. App. 359, 367, 553 A.2d 188 (1989). The defendant here has failed to demonstrate that his hospital statement was admissible on any of his stated grounds.

First, we agree with the trial court that the defendant's statement is not an admission. Out-of-court statements are not hearsay if those statements are admissions, i.e., statements made by a party opponent and offered against him. *State* v. *Stepney,* 191 Conn. 233, 249, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *In re Jason S.,* 9 Conn. App. 98, 103, 516 A.2d 1352 (1987); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5. The defendant could not offer his own statements for his own benefit under the admission exception to the hearsay rule. *State* v. *Brown,* 22 Conn. App. 521, 523, 577 A.2d 1120 (1990); *In re Jason S.,* supra, 103–104.

The defendant's police statement contains none of the essential guarantees of reliability necessary to justify its admission into evidence under the three other suggested exceptions to the hearsay rule. See *State* v. *Erhardt,* supra, 368. This self-serving statement was not offered as an expression of the defendant's pain or suffering, or as a reflection of his subjective state of mind, or as an innocent, unselfconscious and necessary identification of his attacker. See, e.g., *State* v. *McDowell,* 179 Conn. 121, 125, 425 A.2d 935 (1979); *State* v. *Cato,* 21 Conn. App. 403, 408–409, 574 A.2d 240 (1990); *State* v. *Dollinger,* 20 Conn. App. 530, 542, 568 A.2d 1058 (1990). The defendant failed to demonstrate that the circumstances "indicate a strong likelihood that the statement is truthful." *State* v. *Erhardt,* supra.

The defendant also claims that his statement should have been admitted to show the bias of the police offi-

cer who took the statement, on the basis of the fact that the defendant, rather than the victim, was subsequently arrested. This claim is merely the defendant's last attempt to find a basis for admitting his self-serving statement into evidence. His argument makes clear that he wanted the statement admitted not for impeachment purposes but rather for its truth, that is, that Jones struck the first blow and that the defendant acted only to protect himself. "[A] purely hearsay statement [cannot] be admitted as substantive proof of a fact under the guise of impeaching a witness." *State* v. *Saia,* 172 Conn. 37, 50, 372 A.2d 144 (1976).

The court has broad discretion to determine that hearsay evidence is nonetheless admissible because it is clearly necessary and relevant to the resolution of issues. *State* v. *Erhardt,* supra. The fact that the defendant was unavailable to testify does not automatically mean there is such a necessity for admitting the hearsay. Id. Nor does the defendant's allegation that he was attacked first make his hospital statement relevant to the issue of whether a jury instruction on self-defense was warranted. Such a determination requires the court to find that the defendant presented sufficient evidence to satisfy the preliminary requirements of this defense, such as whether the defendant's use of deadly force was reasonable in the circumstances. As next discussed, the defendant's statement contains no facts fitting these requirements, and we find that the court could reasonably have concluded that the defendant's statement was inadmissible hearsay. See id.

B

The defendant contends that sufficient evidence was adduced at trial, even absent his hospital statement, to require a jury instruction on self-defense. The defendant's surgeon testified that he had performed

a recent and painful procedure on the defendant to remove part of his lung, and that the defendant was, at the time of the incident, still recuperating and would likely have found physical exertion both difficult and painful. On cross-examination of three police officers who had seen him on the night in question, the defendant elicited confirmations that he was injured and needed immediate hospital treatment. The defendant was described as being "covered with blood," and no testimony was offered that the blood was not his own. The evidence in his medical records described his injuries and contained his statement that *he* had been assaulted. These injuries included a defensive wound on his palm. The victim himself testified that, at one point in the struggle, he had the defendant backed against the door and had one hand at the defendant's throat.

This evidence, even when viewed in the light most favorable to the defendant, does not, without impermissible speculation, raise the inference that the defendant acted in self-defense. That the defendant had recent surgery is uncontested, but this fact does not support a reasonable inference that the defendant would not therefore have attacked the victim. The defendant was obviously well and strong enough to inflict the victim's grievous wounds. The testimony of the police officers and medical personnel indicates only that the two men engaged in an altercation, each sustaining injuries.

None of the evidence referred to by the defendant is relevant to the statutory requirements of a justification defense. The fact that the victim had the defendant on the defensive at one point in their struggle says nothing about who began the altercation. See General Statutes § 53a-19 (c) (2); *State* v. *DeJesus,* 194 Conn. 376, 390, 481 A.2d 1277 (1984) (self-defense claim is

unavailable to an initial aggressor). Because the assault did not occur in his home, the defendant was also under a duty to retreat to avoid his undisputed use of deadly force. General Statutes § 53a-19 (b); *State* v. *DeJesus,* supra, 391; *State* v. *Shaw,* 185 Conn. 372, 378–79, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982).

The use of deadly force must ultimately be reasonable in the circumstances. The test of an appropriate physical response to a threat is both subjective and objective. *State* v. *Hall,* 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990). A level of deadly force may be used only in response to an aggressor's use or threat of deadly force or great bodily harm. General Statutes § 53a-19 (a). The only evidence of the force of the victim's alleged attack on the defendant consisted of an abrasion on the defendant's neck and a cut on his palm.

Finally, it is unreasonable to continue the use of deadly force after the aggressor is subdued. *State* v. *DeJesus,* supra, 392. After striking an incapacitating blow that thwarts an attack, the defender simply cannot continue to beat the victim. Id. The victim's testimony and the evidence of his injuries indicate that the defendant relentlessly pursued him through several rooms of the apartment, wielding a variety of weapons, attacking at times from above and continuing the assault although the victim was lying defenseless on the floor.

A jury instruction on self-defense is not available to a defendant merely for the asking. The defendant would only have been entitled to a jury instruction on his theory of self-defense if he had presented applicable evidence " 'no matter how weak or incredible . . . . ' " *State* v. *Belle,* supra. However low the evidentiary standard may be, it is nonetheless a threshold the defendant must cross. The defendant may not ask the court to boost him over the sill upon speculation and

conjecture. Id. No evidence was presented here from which the jury could reach conclusions of fact without resorting to such speculation. The court correctly determined as a matter of law that the defendant offered no basis for a conclusion that he reasonably believed he was under an attack of deadly force to which he reasonably responded after trying to retreat. We conclude, therefore, that the trial court properly refused to charge on the defense of justification.

## II

The defendant next asserts that the trial court should have granted his motion to strike the victim's testimony as a sanction for the destruction of an evidentiary tape recording. The tape contained the victim's oral statement of the assault given in the hospital to Detective Nicholas Franco of the New Haven police department six days after the incident. The tape was transcribed by a stenographer, and the transcript was reviewed by Franco. Nine days after giving his statement, Jones reviewed the transcript and signed it under oath. The tape was later destroyed.[2]

After Jones testified at trial, the state disclosed that it had originally taped and then erased Jones' hospital statement. The defendant moved to strike Jones' testimony. After an evidentiary hearing, the court deter-

---

[2] The defendant also claims that he called 911 to report that he had been the victim of an attack, but that the tape of this call was destroyed by the police. The state is well aware that recordings of emergency 911 telephone calls must be preserved. See *State* v. *Williamson,* 14 Conn. App. 108, 112–13, 552 A.2d 815, aff'd, 212 Conn. 6, 562 A.2d 470 (1989). The defendant did not brief the effects of this alleged destruction of evidence and merely relegated the issue to a single statement in a footnote. Recent cases have commented on the impropriety of raising claims and arguments in footnotes. See, e.g., *State* v. *Ruscoe,* 212 Conn. 223, 241 n.9, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *In re Jesus C.,* 21 Conn. App. 645, 649, 575 A.2d 1031 (1990); *State* v. *Webley,* 17 Conn. App. 200, 202 n.2, 551 A.2d 428 (1988). We decline to consider this issue.

mined that the police had acted in bad faith because "they knew or should have known" not to destroy disclosable material. The court nevertheless denied the defendant's motion to strike, finding that there was "absolutely no prejudice to the defendant." The defendant challenges this ruling, claiming that a finding of bad faith compelled the court to strike the testimony, or that, absent bad faith, the state failed to meet its burden of demonstrating that the loss of evidence was harmless under the circumstances. We do not agree.

We are discouraged to find before us yet another instance of the deliberate destruction of evidence by the New Haven police. See *In re Jesus C.,* 21 Conn. App. 645, 648, 575 A.2d 1031 (1990) (listing eight cases on this problem as a sample of the many heard in this court and our Supreme Court since 1981). "[T]he state cannot avoid its obligations under the rules of practice governing discovery by destroying discoverable material . . . and, in appropriate circumstances, the affected testimony may be struck as a sanction for such destruction." Id. This sanction is not automatically required, however, if the destruction is intentional but not in bad faith. *State* v. *Belle,* supra, 268.

Despite the trial court's express finding here of the state's in bad faith, the definition of what constitutes bad faith has been recently clarified. The destruction of tapes is not in bad faith unless "done with intent to deprive the defense of information." *State* v. *Williamson,* 212 Conn. 6, 16, 562 A.2d 490 (1989). The trial court here expressly found that the tape erasure was made pursuant to routine police policy. Nothing in this case indicates that the police acted maliciously or with intent directed to this particular defendant. See *State* v. *Belle,* supra, 269; *State* v. *Johnson,* 214 Conn. 161, 173–74, 571 A.2d 79 (1990).

We have reviewed the relevant factors and are not persuaded that the defendant suffered a constitutional violation as a result of the state's destruction of Jones' taped statement. Our review of the record indicates that the victim read and adopted a counterpart transcript shortly after making his statement. See *State* v. *Johnson,* supra, 174; *State* v. *Santangelo,* 205 Conn. 578, 589, 534 A.2d 1175 (1987). The court found no critical inconsistencies between Jones' trial testimony and either the transcript or Franco's written police report prepared at the time of the incident. See *State* v. *Belle,* supra, 270–71. "Where all indications are . . . that the witness has given consistent statements, we have been reluctant to find that the defendant suffered prejudice." *State* v. *Johnson,* supra, 175–76. Nor can we say that Jones' account of the assault was inconsistent with the defendant's version. See *In re Jesus C.,* supra, 651. The defendant did not testify and thus offered *no* version of the events.

Finally, the defendant's conviction did not rest solely on Jones' testimony. Although the victim's account bore on the critical issues in the case, the state had strong, untainted proof of the assault. See id. The medical records in evidence indicate that both men were involved in an altercation on the evening of November 30, 1986, in which the victim was beaten nearly to death. It is true that Jones' testimony provided the identification of the defendant as the assailant, but the defendant never denied his involvement and has not alleged that the missing tape contains material which would disprove his involvement. Because it is more probable than not that the production of the taped statement would not have affected the outcome of the trial, we conclude that the trial court did not abuse its discretion in refusing to strike Jones' trial testimony.

The defendant also asks us to invoke our supervisory powers to reverse his conviction as a remedy for the

state's " ' "cynical attitude towards the judiciary." ' "
See *State* v. *Ubaldi,* 190 Conn. 559, 571, 462 A.2d 1001,
cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed.
2d 259 (1983). In the absence of bad faith, however,
we will not apply this extreme sanction without weigh-
ing the state's culpability for destroying the taped state-
ment against the resulting prejudice to the defendant.
*State* v. *Santangelo,* supra, 587–88. "[A]lthough demon-
strating a disturbing indifference to the rule of law";
*State* v. *Williamson,* supra; the erasure of Jones' taped
statement was not done with the intent to deprive the
defendant of information. As discussed above, the
defendant suffered little prejudice. We agree with the
trial court that the police certainly should have known
better even then, but the erasure occurred in 1986,
before the accumulating number of judicial opinions on
this issue made our displeasure blindingly clear. How-
ever much we deplore the deliberate destruction of
discoverable material, we decline to overturn this
defendant's conviction; our outrage is more properly
directed to more current defiance of our mandates.

### III

Because the defendant did not take the witness stand
at trial, the court instructed the jury on the defend-
ant's right to remain silent. The defendant had submit-
ted a request to charge, specifically asking the court
not to refer to the defendant's "failure" to testify. The
defendant requested that the jury be charged that he
has "exercised his constitutional right" not to speak
in his own defense, and he has "chosen not to testify."
The court denied the defendant's request and, pursuant
to General Statutes § 54-84 (b),[3] instructed the jury to
draw no adverse inference from the defendant's "fail-
ure" to testify.

---

[3] General Statutes § 54-84 provides in pertinent part: "(b) Unless the
accused requests otherwise, the court shall instruct the jury that they may
draw no unfavorable inferences from the accused's failure to testify . . . . ."

The defendant claims that the court should not have refused to use his requested charge and should not have substituted the statutory language. Unlike cases where a defendant complained about the "no adverse inference" instruction for the first time on appeal, the defendant here points out that he objected at trial. See, e.g., *State* v. *Wright,* 197 Conn. 588, 594–95, 500 A.2d 547 (1985); *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985); *State* v. *Tatem,* 194 Conn. 594, 595, 483 A.2d 1087 (1984). "If the defendant felt that the word 'failure' had unfavorable connotations, he could have requested that the court modify the charge or not give it at all. . . . In light of the defendant's inaction, the trial court justifiably employed the language of § 54-84 (b)." *State* v. *Wright,* supra, 595. The defendant here points out that he did request modification of the charge, and claims that, therefore, the trial court was not justified in using the statutory language.

This claim is untenable. There is no rational justification for the defendant's position that the statutory language was an unacceptable alternative to his own suggested jury instructions. Recognizing that the jury may impermissibly hold the defendant's silence against him, § 54-84 (b) requires the court, even if not so requested, to give jury instructions to reduce speculation. *State* v. *Thurman,* 10 Conn. App. 302, 309, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). The statute thus protects the defendant's rights more stringently than either the federal or state constitution. *State* v. *Sinclair,* supra, 585. A court's failure to comply with § 54-84 (b) is plain error; id., 582; and deviations altering the meaning of the charge are grounds for reversal. *State* v. *Tatem,* supra. We do not read *Wright* as suggesting that a defendant's request for modification is binding on the court or that using the statutory language despite a request for modification constitutes reversible error.

The defendant has by implication challenged the constitutionality of § 54-84 (b). The gist of his argument is that the statute's use of the word "failure" nullifies the presumption of innocence by raising the implication that the defendant had an unmet obligation, an obligation either to respond to the accusation or to prove his innocence. Even if we agree that the word "failure" has a negative connotation, we cannot agree that it is the word itself which generates the prejudice to the defendant. The court's use of this word did not alert the jury to a fact of which it had been unaware, or make it more likely that the jury would draw an adverse inference from the defendant's silence.

The jury is patently aware of this "failure." The United States Supreme Court has noted that "[i]t has been almost universally thought that juries notice a defendant's failure to testify. . . . ' "The laymen's natural first suggestion would probably be that the resort to privilege in each instance is a clear confession of crime." ' " *Carter* v. *Kentucky,* 450 U.S. 288, 301 n.18, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). "Certainly the silence of the defendant without explanation or contradiction by him is perceived by the jury, 'which perceiving they can no more disregard than one can the light of the sun, when shining with full blaze on the open eye.' " *State* v. *Tatem,* supra, 601, quoting *State* v. *Cleaves,* 59 Me. 298, 301 (1871).

Jurors cannot be prevented from speculating about why the defendant refuses to speak for himself in the face of criminal accusations, but the court must "use the unique power of the jury instruction to reduce that speculation to a minimum." *Carter* v. *Kentucky,* supra, 303. The very nature of the "no adverse inference" instruction specified in § 54-84 (b) is to dispel and ameliorate the inevitable speculation and to mitigate the damage to the defendant. The defendant here merely

prefers his own phrasing of this warning not to specu-late. Calling such failure by a different name would not completely counter the risk inherent in the defendant's choosing to stand silent, and we cannot fault the court's adherence to statutory mandates.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LAVERY, J., dissenting. I cannot adopt the majority's view that the defendant was not entitled to a jury charge of self-defense. I, therefore, respectfully dissent.

It is recognized as a matter of federal and Connecti-cut constitutional law, that in criminal trials due pro-cess requires the jury to be instructed on a defense when evidence of such a defense has been introduced. See, e.g., *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982); *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974).

The majority correctly notes that in Connecticut the evidentiary threshold entitling a defendant to a defense instruction is very low. Citing *State* v. *Belle,* 215 Conn. 257, 275, 576 A.2d 139 (1990), the majority points out that "the [defense] instruction must be given if there is *any* foundation in the evidence for the defense the-ory." (Emphasis in original.) It is well settled that on appeal the evidence must be viewed in the light " 'most favorable to the defendant . . . .' " *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986). In *Fuller,* our Supreme Court held that a jury charge is "obligatory" and a " 'defendant is "entitled to have instructions pre-sented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . ." *United States* v. *Platt,* 435 F.2d

789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' " *State* v. *Fuller,* supra, 278.

Applying this standard to the facts introduced in this case, and taking the evidence in the light most favorable to the defendant, I cannot avoid the conclusion that there was a sufficient factual foundation placed before the jury to support an instruction on self-defense. The following facts speak for themselves: hospital records produced at trial indicated that the defendant stated he was assaulted; these same records describe a defensive wound on the palm of the defendant's hand. There was no third party witness to the altercation between the defendant and the victim, thus leaving the victim's testimony as the only report of the altercation. The victim himself testified that at one point in the scuffle he had the defendant by the throat, backed up against a door. The defendant's surgeon testified that at the time of the fight the defendant was recuperating from extensive chest surgery which would have rendered him weak and easily exhausted from any physical exertion. In my opinion, the testimony and evidence outlined above, without more, provided an ample basis to entitle the defendant to a jury instruction of self-defense.

Accordingly, I dissent.