STATE OF CONNECTICUT *v.* MARVIN WOODARD
(9778)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued February 11—decision released June 16, 1992

*Laura W. Ray,* with whom were *William H. Bright, Jr.,* and, on the brief, *William H. Narwold,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61, burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), and kidnapping in the second degree in violation of General Statutes § 53a-94. The defendant claims that the trial court (1) improperly instructed the jury on circumstantial evidence, and (2) should have excluded the testimony of a witness after it was revealed that the New Haven police department had destroyed a tape recording of her telephone call to the police department. We affirm the judgment of the trial court.

On the evening of September 25, 1989, the defendant was in his apartment, which he shared with Alvin Bittle and Theresa Miller. The defendant became irritated because his girl friend, Ida Huckabee, was not at her apartment. The defendant told Miller that he was going to beat Ida and that he was ready to "do a jail bit." Armed with a knife, the defendant then left his apartment and went to the apartment of Cynthia Huckabee, Ida's sister.

Ida Huckabee was at her sister's apartment with her nephew and a former boyfriend. When the defendant arrived at Cynthia's apartment, he began kicking and banging on the front door. Ida told the defendant that he could not come in. The defendant eventually forced his way into the apartment, damaging the door and breaking a window. The defendant went into the basement in search of Ida, who was hiding there. The defendant and Ida were arguing when Cynthia arrived at the apartment. She went to the basement where she saw the defendant beating Ida. Although Ida resisted, the defendant pulled her out of the basement and punched her when he got her upstairs. The defendant waved his knife at Cynthia in a menacing way. Cynthia observed that Ida was bleeding from the mouth.

The defendant pulled Ida out of Cynthia's apartment by her shirt. Ida had no shoes on and did not appear to want to go with the defendant. She asked Cynthia to help her.

After the defendant and Ida left Cynthia's apartment, the police arrived. Cynthia accompanied them to the defendant's apartment but they could not find Ida or the defendant. Cynthia did not see Ida again that night. The police told Cynthia to contact them if she learned of the defendant's whereabouts.

The defendant later brought Ida to his apartment. Miller and Bittle were there. Miller observed that Ida's

mouth was bleeding and that there was blood on her clothing. According to Miller, Ida wanted an ambulance but the defendant would not permit it. Ida laid down on a mattress in Bittle's room where she cried and said "Don't hit me no more."

In the afternoon of September 26, Cynthia learned that the defendant and Ida were in the defendant's apartment. Cynthia telephoned the police and met them when they arrived. The defendant was apprehended in the apartment after having attempted to climb out a back window. Ida was in obvious pain, appeared to have an injury to her ribs, and had difficulty breathing and speaking. Later medical examination revealed that Ida had suffered contusions to the right side of the head and the lower right ribs and swelling above the right ear.

At trial, the defendant called Ida as his only witness. She admitted that she and the defendant fought in the basement of Cynthia's apartment, that the defendant grabbed her and held her to prevent her movement, that the defendant hit her and gave her a bloody nose, and that he kicked her and dragged her upstairs. She also admitted that she told other people that she hid in the basement to escape the defendant and that she was beaten by the defendant. Ida also testified that she told the defendant to enter the apartment through a window, that she did not hide in the basement, that she did not ask Cynthia for help, that she left the apartment with the defendant of her own free will, and that the pain in her head was not the result of the assault.

I

The defendant claims that the trial court improperly instructed the jury on circumstantial evidence.[1] The

---

[1] The trial court instructed the jury on circumstantial evidence as follows: "Now, there are, generally speaking, two kinds of evidence, direct evidence and circumstantial evidence. Direct evidence is testimony by a

defendant contends that we must reverse the conviction because the trial court never told the jury that facts to be inferred from circumstantial evidence must be proved beyond a reasonable doubt and because the trial court's example of the permissible use of circumstantial evidence allowed the jury to infer facts under a burden of proof not rising to proof beyond a reasonable doubt. The defendant also argues that the challenged instruction allowed the jury to look to the evidence presented by the defendant to ascertain whether an inference sought by the state had been disproved by him.

The defendant's challenge to the instruction on circumstantial evidence is raised for the first time on appeal. He seeks our review of this claim pursuant to *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 832 (1989). He can prevail on a claim of constitutional error not preserved at trial if he can show that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra, 239–40.

In its instruction, the trial court told the jury to "[k]eep in mind that facts essential to the ultimate inference of guilt must be proved beyond a reasonable doubt." The defendant's argument on appeal requires a reading of the charge as though it lacked this critical language. Read in its entirety the challenged

witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence. That is, proof of a chain of facts from which you could find that another fact exists even though it has not been proved directly. You are entitled to consider both kinds of evidence. . . . By way of example, and this is only an example of circumstantial evidence. If you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. Other evidence, such as a turned on garden hose may, however, explain the water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all of the evidence in light of reason, experience and common sense. Keep in mind that facts essential to the ultimate inference of guilt must be proved beyond a reasonable doubt."

instruction correctly stated our law and did not dilute the state's burden of proof or place an improper burden on the defendant. See *State* v. *Price,* 205 Conn. 616, 622, 534 A.2d 1196 (1987); see also *State* v. *Williams,* 220 Conn. 385, 399, 599 A.2d 1053 (1991); *State* v. *Willis,* 24 Conn. App. 678, 681–83, 591 A.2d 445, cert. granted, 220 Conn. 907, 593 A.2d 968 (1991). It therefore properly guided the jury in its consideration of the evidence, and failed to satisfy the third prong of *Golding.* Thus, the defendant cannot prevail on this claim.

## II

The defendant next claims that the trial court should have excluded the testimony of Cynthia Huckabee because the New Haven police department erased the tape recording of her September 26, 1989 telephone call to the police. We will not review this claim, however, because the defendant did not properly preserve the claim for appellate review.

On September 14, 1990, the defendant filed a motion to exclude Cynthia's testimony, alleging that the police had intentionally destroyed a recorded statement she made on September 25, 1989. Prior to this motion, the defendant had made a motion to preserve evidence that was granted on November 1, 1989. An evidentiary hearing was held during the course of the trial to determine whether Cynthia's testimony should be excluded. On the basis of Cynthia's testimony that she made no phone call to the police on September 25, the defendant conceded that his motion to exclude her testimony for failure to preserve the recording of a phone call made on that date had no viability. The defendant then pursued his motion on the basis of Cynthia's testimony that she telephoned police on the afternoon of September 26, 1989, and the testimony of Lieutenant Stephen Jankowski that the telephone number Cynthia called was a tape recorded line.

The state represented to the court that it first learned that Cynthia had telephoned the police on September 26 when she testified to that fact at the evidentiary hearing. On the basis of the police reports available to it, which reports placed the crime as occurring on September 25, 1989, at 11:45 p.m., the state had requested that the New Haven police department preserve any tape from September 25. The police complied with the state's request and preserved the tape from September 25. An examination of this tape revealed that it contained nothing pertaining to this case. Neither the state nor the defendant knew that a pertinent phone call had been made on September 26. The state did not seek to preserve the tape from September 26. The tape of calls made on September 26 was erased and reused by the New Haven police approximately forty-five days later.[2]

The trial court found the following facts regarding the September 26 tape: a tape recording was made of the phone call; whatever statements of substance made by the witness concerning the conduct of the defendant were made to the police officer when he arrived on the scene rather than through the call to the police station; the intentional destruction of the tape did not

---

[2] This case marks at least the twelfth occasion since 1980 that this court or our Supreme Court has had to consider whether the destruction or loss of a witness' statement by the New Haven police department requires a court to strike the witness' testimony at trial. See *State* v. *Belle,* 215 Conn. 257, 576 A.2d 139 (1990); *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990); *State* v. *Williamson,* 212 Conn. 6, 562 A.2d 470 (1989), affirming 14 Conn. App. 108, 552 A.2d 815 (1988); *State* v. *Kelly,* 208 Conn. 365, 545 A.2d 1048 (1988); *State* v. *Santangelo,* 205 Conn. 578, 534 A.2d 1175 (1987); *State* v. *Mullings,* 202 Conn. 1, 519 A.2d 58 (1987); *State* v. *Meyers,* 193 Conn. 457, 479 A.2d 199 (1984); *State* v. *Shaw,* 185 Conn. 372, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982); *State* v. *Tyson,* 23 Conn. App. 28, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990); *In re Jesus C.,* 21 Conn. App. 645, 575 A.2d 1031 (1990); *State* v. *Sims,* 12 Conn. App. 239, 530 A.2d 1069 (1987), cert. denied, 206 Conn. 801, 535 A.2d 1315 (1988).

involve bad faith and was more in the form of a mistake or negligence; it could find no prejudice to the defendant resulting from his lack of access to the tape; and the state had met its burden of showing the harmlessness of its destruction of the evidence. The court specifically noted, however, that because Cynthia had not yet testified at trial, it would reevaluate its ruling regarding prejudice to the defendant following her testimony if the defendant so wished.

The court stated that "at this time, although the court did have a minimal opportunity to have Cynthia Huckabee testify, her testimony from a substantive standpoint as to this issue is minimal and the court deems most of what it is saying now at a procedural level. The reason I say that is because of [*State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990)]. In other words, the balancing that takes place—normally takes place after a witness has testified and the court can determine whether there are such inconsistencies in the testimony of a particular witness that denial of the tapes to the defense would rise to a reason for sanction. We, obviously, have not had the testimony of Miss Huckabee and . . . assuming that she testifies and I assume that she will . . . if the defense wishes pursuant to *Johnson* [to] raise the issue again, the court will reconsider, to determine whether there is any prejudice. But for the moment, the court can find no prejudice, the court can find minimal culpability on the state's behalf, and for that reason the court is going to deny the defense motion to exclude testimony at this time." The defendant never sought a reevaluation or otherwise moved to strike her testimony after she testified. Because the defendant did not move to strike the testimony of Cynthia Huckabee after she testified at trial, this claim has not been properly preserved for our review. *State* v. *Johnson,* 214 Conn. 161, 169–70, 571 A.2d 79 (1990); *State* v. *Cain,* 25 Conn. App. 503, 507–508, 596 A.2d

449, cert. granted, 220 Conn. 931, 599 A.2d 383 (1991). Regarding the issue of excluding the trial testimony of Cynthia Huckabee as a sanction for the intentional destruction of the tape recording of her telephone call to the police, the trial court issued only a preliminary ruling prior to the witness' trial testimony, not a final adverse ruling. "It was thus incumbent on the defendant to seek a definitive ruling on the striking of [the] witness' testimony after [she] had testified at trial in order fully to comply with the requirements of our rules of practice for preserving his claim of error with respect to [that witness]." *State* v. *Johnson,* supra, 170. Because the defendant failed to preserve this claim in the trial court, we will not consider it.

The judgment is affirmed.

In this opinion the other judges concurred.