STATE OF CONNECTICUT *v.* JOSE W. ZAPORTA
(13078)

DUPONT C. J., and O'CONNELL and SPEAR, Js.

Argued September 21—decision released November 29, 1994

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Warren Maxwell,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of the crime of murder in violation of General Statutes § 53a-54a. The defendant raises three issues on appeal. They are whether the trial court improperly (1) denied the defendant's motion to depose a potential witness, (2) limited the scope of the defendant's cross-examination, and (3) instructed the jury on circumstantial evidence and the presumption of innocence. We affirm the judgment of the trial court.

The jury reasonably could have found certain facts. On the night of August 30, 1991, the victim, Ricardo Figueroa, and his girlfriend, Frances Carrasquillo, stood outdoors talking with several people. The area was illuminated primarily by streetlights. Around 11 p.m., the defendant, with his hands in his pockets, swiftly approached the victim. When the defendant was about three feet away from the victim, he pulled out a gun and shot the victim in the head and the leg. The victim died as a result of his injuries.

This was not the first encounter between the victim and the defendant. One month earlier, the defendant, the victim, and a third person, Raymond Zukowski, had engaged in a fight outside the defendant's house. During this altercation, the defendant sliced Zukowski's temple with a knife. The victim and Zukowski retaliated

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

by beating the defendant with golf clubs. As a result of this beating, the defendant was taken to the hospital. The defendant threatened to avenge his injuries.

## I

The defendant's first issue on appeal concerns the trial court's denial of his motion to depose Carrasquillo, who was standing next to the victim when he was shot. Additional facts are relevant to this claim.

Shortly after the murder, the police interviewed Carrasquillo, showing her three arrays of photographs, including one that contained a picture of the defendant. When Carrasquillo saw the defendant's photograph, she paused for a second or two before moving on to the next photograph. Carrasquillo did not identify the defendant, or anyone else, as the assailant.

At the time of the defendant's probable cause hearing in October and November, 1991, Carrasquillo had moved from where she lived at the time of the shooting to a different location in Hartford. Although the state had difficulty locating her, the defendant, with the help of a private investigator, was able to discover Carrasquillo's whereabouts. Carrasquillo voluntarily attended the probable cause hearing. Because the trial court determined that her proposed testimony concerning her failure to identify a photograph of the defendant as the assailant would not be sufficient to rebut probable cause, the defendant's request to call her as a witness at the probable cause hearing was denied in accordance with General Statutes § 54-46a.[2]

[2] General Statutes § 54-46a (b) provides in pertinent part: "At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause."

In December, 1991, the defendant filed a motion to preserve testimony of a material witness by means of a deposition. The defendant claimed that it was necessary to depose Carrasquillo because (1) she was a material witness who failed to identify the defendant's picture as the assailant's in a photographic array shown to her by the police and who, at the probable cause hearing, told the defendant's counsel that the defendant was not the man who had shot the victim,[3] (2) at the time of the probable cause hearing the state had difficulty locating her, (3) the defense found it necessary to hire a private investigator to locate her for the defendant's probable cause hearing, (4) she was a nervous fifteen year old, (5) she was two years older than the state's witnesses, (6) one state's witness had to be summoned by capias to appear at the probable cause hearing, (7) it was difficult to predict when the trial would take place, (8) it was generally difficult to find witnesses for this trial, and (9) unlike the testimony of the state's witnesses, there was no opportunity to preserve her testimony at the probable cause hearing. The trial court reasoned that the defendant's suspicions concerning the availability of this witness at trial could be applied to every witness in a murder case and could turn every criminal trial into a series of minitrials. The court denied the motion.

The trial took place almost a year after the motion to preserve testimony was filed. Carrasquillo did not testify. The state and the defendant stipulated to certain facts concerning Carrasquillo, which were reported to the jury. These were the detailed description of the assailant that Carrasquillo had provided to the police, and the facts that she did not know the defendant before the shooting, that a failed attempt to issue a sub-

---

[3] The defendant's offer of proof at the probable cause hearing did not include Carrasquillo's statement to defense counsel.

poena to her had been made on the day before trial, that at the time of trial her whereabouts were unknown, and that neither the state nor the defendant was capable of producing her for trial. Further, the court gave the defendant leeway in questioning a police witness about Carrasquillo's statements and the state discussed in its closing argument Carrasquillo's failure to select the defendant's photograph from the array.

On appeal, the defendant asks this court to grant a new trial because the trial court denied his motion to depose Carrasquillo. The defendant argues that the trial court required a showing of absolute unavailability before it would grant a deposition. The defendant, therefore, concludes that the court denied the motion because it believed that it did not have the discretion to grant it. Alternatively, the defendant argues that the trial court did exercise its discretion but abused that discretion in interpreting the language of Practice Book § 791.[4] We disagree with both claims.[5]

---

[4] Practice Book § 791 provides: "In any case involving an offense for which the punishment may be imprisonment for more than one year the judicial authority, upon request of any party, may issue a subpoena for the appearance of any person at a designated time and place to give his deposition if his testimony may be required at trial and it appears to the judicial authority that such person:

"(1) Will, because of physical or mental illness or infirmity, be unable to be present to testify at any trial or hearing; or

"(2) Resides outside of this state, and his presence cannot be compelled under the provisions of Gen. Stat., § 54-82i; or

"(3) Will otherwise be unable to be present to testify at any trial or hearing."

[5] The defendant also argues that he suffered the deprivation of a variety of federal constitutional rights. He argues that unless Practice Book § 791 is construed to allow him to depose Carrasquillo, he is deprived of the right to present witnesses in his own behalf. The defendant does not, however, analyze the constitution in relation to the rules of practice to support his position, and we choose not to consider his argument. See *State* v. *Geisler,* 25 Conn. App. 282, 284 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

Practice Book § 791[6] allows the trial court to use its discretion. The trial court exercises its discretion to determine whether the moving party has satisfied any of the three requirements of the section. The language of § 791 "if it appears to the judicial authority" and "may issue" grant this discretion to the court.

The defendant argues that the trial court construed Practice Book § 791 in such a way as to allow depositions only where it can be proved conclusively that the witness will be unable to testify at trial. To support this argument, the defendant refers to statements made by the trial court during the hearing on the motion to depose. Specifically, the trial court commented that if the defendant could return with a report that the witness was leaving the state or with some other information that would come within the third prong of Practice Book § 791, the trial court would order the deposition.[7]

[6] The parties have not argued that General Statutes § 54-86, the statute concerning depositions in criminal matters, is applicable. They have relied solely on the rules of practice.

General Statutes § 54-86 (a) provides: "In any case involving an offense for which the punishment may be imprisonment for more than one year, the superior court or a judge thereof may, upon the application of the accused, order that the deposition of a witness shall be taken before a commissioner or magistrate, to be designated by the court or judge, if it appears that his testimony will be required at trial and that, by reason of bodily infirmity or residence out of this state, he will be unable to testify at trial."

Since both the statute and the rule of practice concern procedure rather than jurisdiction; see generally *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723 (1974); and the parties have argued only the rule of practice, we decide the issues based on the rule of practice.

[7] The following is the portion of the transcript to which the defendant refers this court: "I'm going to deny your motion. . . . If you can come back to me with something to say that this young girl is leaving, or whatever—is going to be physically not within the state of Connecticut in the very near future. . . . The thing is, I would just say that if you can come within the third ground under § 791, that she'll be unable to be present to testify at any trial—bring that to my attention, and I'll order the deposition. . . . But now, you really have to just have your investigator contact her again. And just have her come in and say—I'm going to be leaving in March to go to Puerto Rico. If that's the case, I'll do it. . . ."

At no point did the trial court indicate that the evidence absolutely had to establish that the witness would be unable to testify. The trial court merely asserted that the defendant had to provide some basis to satisfy Practice Book § 791 and that if the defendant could provide the court with the evidence required by the rule of practice the court would grant the motion. The trial court's exercise of discretion is further supported by its inquiries into where the witness was living and where she went to school. These inquiries indicate that the court used its discretion in applying Practice Book § 791. We conclude that the trial court properly exercised its discretion.

The next step in our analysis is to determine whether the defendant is correct in asserting that this court should look at the trial court's decision in light of events that occurred at trial, rather than in light of the facts as they were a year earlier when the trial court was asked to render the decision. The defendant's proposed standard would require us to incorporate the fact that the witness eventually failed to testify, as well as the stipulations of fact agreed to by the parties at trial.

When a trial court considers a motion to depose, it cannot know whether the witness will eventually testify. See *State* v. *Hamilton,* 228 Conn. 234, 241, 636 A.2d 760 (1994) (review of trial court's denial of motion for continuance to retain private counsel). If this court were to look with hindsight at the denial of a motion to depose to determine whether a trial court abused its discretion, we would be expecting trial courts to be clairvoyant, with the possibility that we might reverse them on grounds that are entirely divorced from the reasons for their decisions. We should, therefore, look at the facts as they existed when the trial court rendered its ruling.

Under Practice Book § 791, a trial court has the discretion to grant a deposition of a potential witness if his testimony may be required at trial *and* if it appears to the judicial authority that one of three circumstances are present. The first circumstance is whether the witness "[w]ill, because of physical or mental illness or infirmity, be unable to be present to testify," the second is whether the witness resides out of state, and the third is whether the witness, "[w]ill otherwise be unable to be present to testify at any trial or hearing." Practice Book § 791. At issue in this matter is the third circumstance.[8]

The third situation of Practice Book § 791 requires the moving party to convince the court that the witness will be unable to testify at trial. The section does not require absolute certainty, but requires a strong likelihood that the witness will be unable to testify. See *State* v. *Darby,* 19 Conn. App. 445, 455, 563 A.2d 710, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). The trial court must look at the totality of circumstances to determine whether the moving party has met its burden.

The reasons provided by the moving party in this matter were not sufficient to demonstrate any likelihood that Carrasquillo would be unable to testify at trial. For example, the defendant's assertions that Carrasquillo was a material witness and that she was two years older than the state's witnesses have no relation to whether the witness would be able to testify at trial.

The reasoning that another state's witness had to be summoned by capias to appear at the probable cause hearing, or that, in general, it was difficult to find witnesses for the trial, has no bearing on whether another individual will be able to be present to testify.

---

[8] The record reflects no evidence that either of the first two circumstances was present.

Carrasquillo was difficult to locate before the probable cause hearing because she had moved. Once Carrasquillo was located, she voluntarily appeared and was willing to testify at the probable cause hearing. This would suggest a likelihood that Carrasquillo would appear at trial as well. The defendant's assertion that he was concerned about the time lag between the date of the motion for deposition and the likely date of trial is not a reason why this witness would not be able to testify at the later date.

Finally, the fact that the state has the mechanism of the probable cause hearing to preserve the testimony of its material witnesses, whereas, the defendant has only the possibility of depositions by which to preserve the testimony of his material witnesses, cannot abrogate the directive of Practice Book § 791 that the defendant must satisfy the rule's requirements.[9] The trial court did not abuse its discretion when it denied the defendant's motion to depose Carrasquillo.

## II

The defendant also argues that the trial court improperly limited the scope of the defendant's cross-examination. Certain additional facts are relevant to this claim.

Vannon Shelton, a witness to the crime, was taken to the police station after the murder. At the station, Shelton provided the police with a sworn statement that asserted that Shelton was 50 percent certain that the defendant had shot the victim and 100 percent certain that the defendant had engaged in a fight with the victim a month earlier.

---

[9] In this case, the state and the defendant stipulated to the basic facts to which the witness would have testified had she been present at trial, which comes close to preserving the testimony of a material witness.

At the probable cause hearing, Shelton testified under oath that he was 100 percent certain that the defendant had shot the victim and 100 percent certain that the defendant had been involved in an altercation with the victim the previous month. Shelton also stated that he was not under oath when he gave the original statement to the police.

At trial, prior to Shelton's testimony, the state called Detective James C. Rovella to the stand. On cross-examination, the defense asked Rovella whether the statement that Shelton gave to the police was a sworn statement. The state objected.

Outside the presence of the jury, counsel for the defendant told the court about Shelton's change of testimony at the probable cause hearing and said that the question was being asked in anticipation of Shelton's testimony at trial. The prosecutor stated that he would not object to the question and the jury was called back. Rovella then testified that he was present when Shelton gave his statement at the police station and that he was present when Shelton swore to the truth of the statement.

Immediately before Shelton testified, outside the presence of the jury, the prosecutor indicated to the court that although he thought it was legitimate to cross-examine Shelton about whether Shelton had made a false statement to the police, it was not material to cross-examine Shelton about whether he was under oath when he made the statement. The state moved for an in limine ruling that would prevent counsel from eliciting testimony from Shelton concerning whether he was under oath when he gave his statement to the police, reasoning that the jury already had testimony from Rovella that the defendant had been under oath. The trial court granted the motion, to which the defendant excepted.

When the defense cross-examined Shelton, the jury learned that although Shelton was 100 percent certain at trial that the defendant was the assailant, he was only 50 percent certain when he spoke to the police. Shelton asserted that he told the police that he was only 50 percent certain that the defendant was the assailant because he was scared at that time. When the defense asked Shelton if he had lied to the police, Shelton responded that he had no comment. The defense then asked if Shelton had made the statement to the police under oath. The state objected to the question and the trial court sustained the objection.

The defendant argues that he should be granted a new trial because the trial court's restriction of the defendant's cross-examination of Shelton violated the defendant's constitutional rights to confrontation. In the alternative, the defendant argues that the trial court abused its discretion by impermissibly limiting the defendant's cross-examination of Shelton. We disagree with both claims.

"The confrontation clauses of both the federal and state constitutions grant a criminal defendant the right to confront all witnesses who testify on behalf of the state." (Internal quotation marks omitted.) *State* v. *Crosby,* 34 Conn. App. 261, 272, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994). Specifically, "[a] witness may be impeached by evidence of specific acts of misconduct that relate to veracity . . . [including] testimony that [the witness] lied under oath . . . ." *State* v. *Suarez,* 23 Conn. App. 705, 709, 584 A.2d 1194 (1991).

"The right to cross-examine adverse witnesses is not absolute, however, and limitations on the scope of cross-examination are within the sound discretion of the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Crosby,* supra, 34 Conn. App. 272. For example,

"trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things . . . confusion of the issues . . . or interrogation that is repetitive or only marginally relevant." (Internal quotation marks omitted.) *State* v. *Lee,* 229 Conn. 60, 70, 640 A.2d 553 (1994), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

"[W]e must first determine whether the trial court allowed minimum cross-examination to satisfy the constitutional requirements for confrontation. . . . If the constitutional standards for confrontation are satisfied, we must next determine whether the trial court abused its discretion by restricting cross-examination." *State* v. *Crosby,* supra, 34 Conn. App. 272–73.

"In order to satisfy [the constitutional] standards, the court must allow the defendant to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) Id., 273.

Here, the defendant was able to elicit, by inference from Shelton, that Shelton had lied to the police when he said that he was 50 percent certain the defendant was the shooter. The jury already had heard, during the cross-examination of Rovella, that the witness was under oath when he gave his statement to the police. The repetition of Rovella's testimony that the witness was under oath or a denial by Shelton that he was under oath would have added nothing new for the consideration of the jury. We are satisfied that there was no violation of the defendant's constitutional right of confrontation.

"To establish an abuse of discretion, it must be shown that restrictions imposed on cross-examination were

clearly prejudicial.'' Id. The defendant here had a full and fair opportunity to cross-examine the witness about his statements to the police. The jury was aware, from Rovella's testimony, that the witness was under oath when he made those statements to the police. The defendant was not prejudiced by the trial court's limitation of the defendant's cross-examination.

### III

In this final claim, the defendant asks us to consider whether the trial court's instructions on circumstantial evidence and the presumption of innocence were improper.

The defendant argues that the trial court's instructions on circumstantial evidence diluted the state's burden of proof beyond a reasonable doubt. The defendant contends that he should be awarded a new trial because the trial court did not give the jury an affirmative charge on the standard of proof to be applied to circumstantial evidence. More specifically, he contends that the trial court did not inform the jury that the underlying facts, if essential to proof of an element, and accompanying inferences, had to be proved beyond a reasonable doubt.[10]

---

[10] The trial court stated in its charge to the jury: "There are generally speaking two kinds of evidence, direct and circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence. . . . You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both, but it is for you to decide what weight you will give to any evidence.

"By way of example—if you woke up this morning and saw that the sidewalk was wet you might find that it rained during the night. Other evidence such as a turned on garden hose might explain the water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence you must consider all of the evidence in light of reason, experience and common sense.

* * *

"As I said, proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact, but that you may use circumstantial evidence to find the facts proven."

We analyze this claim in three steps. First, we will assess the reviewability of the matter. Second, we will determine whether it is appropriate to evaluate the charge as a whole or to inspect with close scrutiny that portion of the charge concerning circumstantial evidence. Finally, we will consider whether the charge diluted the state's burden of proof beyond a reasonable doubt, and, if so, whether the constitutional violation clearly deprived the defendant of a fair trial.

The defendant did not file a request to charge on circumstantial evidence, nor did he take an exception to the instruction that he now challenges on appeal. While ordinarily this would preclude review of this issue, the defendant has asked us to examine the matter under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." (Internal quotation marks omitted.) *State* v. *Cardany,* 35 Conn. App. 728, 733, 646 A.2d 291 (1994), quoting *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994); see *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992).

Here, the first two prongs of *Golding* are satisfied. There is an adequate record for review and "the right not to be convicted except by proof beyond a reasonable doubt is a constitutional right." *State* v. *Graham,* supra, 33 Conn. App. 442. Thus, we will review the defendant's claim.

We must first determine whether our review of the charge should be limited to an examination of that portion of the instruction that concerns circumstantial evidence or whether we should examine the charge as a whole. The defendant urges us to consider only the circumstantial evidence portion of the jury charge. In support of this argument, the defendant directs our attention to the *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), line of cases.[11] The defendant

---

[11] The *Whelan* line of cases began with a potential conflict between two Supreme Court decisions in *State* v. *Reddick,* 197 Conn. 115, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), and *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985).

In *State* v. *Reddick,* supra, 197 Conn. 130–31, the defendant claimed "that the court's instructions concerning circumstantial evidence and the right of the jury to draw inferences . . . permitted the jury to infer and find proven the defendant's intent . . . by a fair preponderance of the evidence rather than beyond a reasonable doubt." The Supreme Court looked at the charge as a whole and determined that the instruction did not dilute the state's burden of proof. Id., 132.

In *State* v. *Rodgers,* supra, 198 Conn. 57, the defendant claimed "that the requisite standard of proof beyond a reasonable doubt was impermissibly diluted by the trial court's instruction that an inference may be drawn provided 'that it is more probable that the fact to be inferred is true.' " Here, the Supreme Court asserted, "[o]rdinarily, for a determination of whether the jury has been misled, a charge is to be read as a whole, and detached clauses are not to be considered by themselves but in connection with the whole. . . . We cannot bring the case within the purview of this rule. . . . The present case particularly called for a correct instruction on the meaning and utilization of circumstantial evidence in a criminal case. There exists such a contradiction between the erroneous instruction and the admixture of correct doctrine that as a whole it cannot be said that the incorrect statement did not influence the jury." (Citation omitted.) Id., 58–59. The Supreme Court found error in the instruction. Id., 60–61.

argues that the close scrutiny standard is appropriate in this case because the principal factual issue is a mixture of intent and identity rather than identity alone.

*State* v. *Reddick,* 197 Conn. 115, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), and *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985),[12] on which *State* v. *Whelan,* supra, 200 Conn. 743, rests, concern instructions where the trial court alluded to a "preponderance of the evidence" standard. There is no question that a charge that allows a jury to find a fact essential to prove an element of a crime with proof less than beyond a reasonable doubt, whether that proof be by circumstantial or direct evidence, is improper. If such a charge on circumstantial evidence is given, the question becomes whether a jury would be misled. To answer that question, *State* v. *Whelan,* supra, 757, holds that the reviewing court should look at the instruction as a whole if the principal disputed issue was identity but look at the charge on circumstantial evidence in isolation if the principal disputed issue was intent.

In *State* v. *Whelan,* supra, 200 Conn. 743, the Supreme Court reconciled the two opinions. The court held that, "[w]here the principal factual issue is intent, which is characteristically proven by circumstantial evidence . . . the court's instructions regarding the use of circumstantial evidence as proof of this essential element are subject to close scrutiny. . . . Alternatively . . . where . . . the principal factual issue is identity, which is not classically dependent upon circumstantial evidence for its proof, the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence." (Citations omitted; internal quotation marks omitted.) Id., quoting *State* v. *Farrar,* 7 Conn. App. 149, 155, 508 A.2d 49 (1986).

[12] *State* v. *Rodgers,* supra, 198 Conn. 60, decides the question left unanswered by *State* v. *Reddick,* supra, 197 Conn. 115. *Rodgers* held that it is improper to instruct "the jury that an inference may be drawn if it is more probable that the fact to be inferred is true" (internal quotation marks omitted); *State* v. *Rodgers,* supra, 60; if the fact is essential to an element of the crime.

Here, the claimed erroneous statement—"you must consider all of the evidence in light of reason, experience, and common sense"—was not, in and of itself, erroneous. See *State* v. *Sinclair,* 20 Conn. App. 586, 596–97, 569 A.2d 551 (1990); *State* v. *Wright,* 9 Conn. App. 275, 281–82, 518 A.2d 658 (1986), cert. denied, 203 Conn. 802, 522 A.2d 293 (1987). It does not indicate to the jury that the state's burden of proof is anything less than beyond a reasonable doubt. The defendant argues that the instructions at issue here are more erroneous than a "more probable than not" charge because the jury was permitted to draw inferences without the application of any standard to the underlying facts it found.

In the "more probable than not" type of charge, the trial court may risk putting an erroneous standard before the jury. Here, there was no such erroneous instruction. In fact, it is likely that the jury was led to believe that the state had to prove beyond a reasonable doubt all underlying facts rather than just those essential to proof of an element of the crime. See *State* v. *Rodgers,* supra, 198 Conn. 53. This would make the burden of the state even higher than that constitutionally required.

The instruction on circumstantial evidence given in this case did not suggest to the jury that the state's burden of proof was something less than beyond a reasonable doubt, but rather, gave no guidance as to the proper standard of proof. In *State* v. *Woodard,* 27 Conn. App. 786, 609 A.2d 1027, cert. denied, 223 Conn. 917, 614 A.2d 831 (1992), and *State* v. *Sinclair,* supra, 20 Conn. App. 586, this court looked at the charge as a whole when the defendant questioned jury instructions that were similar to the one at issue in this case.[13] We,

---

[13] In *State* v. *Woodard,* supra, 27 Conn. App. 790, the defendant asked us to reverse his conviction because the trial court, among other things, "never told the jury that facts to be inferred from circumstantial evidence

therefore, will examine the court's circumstantial evidence instruction in the context of the charge as a whole to determine whether it is reasonably possible that the instruction misled the jury.[14]

Looking at the charge as a whole, we conclude that the trial court did not impermissibly dilute the state's burden of proof beyond a reasonable doubt. The state is not required to prove every inferred fact beyond a reasonable doubt before it may be considered a basis for an additional inference. *State* v. *Crafts*, 226 Conn. 237, 246–47, 627 A.2d 877 (1993). "It is only where a single fact is essential to proof of an element . . . that such evidence must support the inference of that fact beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 246.

Although the trial court did not use this specific language in its charge, the court did repeat the state's burden of proof many times throughout the charge. For

must be proved beyond a reasonable doubt . . . ." The instruction given was verbatim to that in the present case, except that the court immediately added, " '[K]eep in mind that facts essential to the ultimate inference of guilt must be proved beyond a reasonable doubt.' " Id. In the present case, a sentence of similar import was given but did not immediately follow the instructions on circumstantial evidence.

In *State* v. *Sinclair*, supra, 20 Conn. App. 595–96, the trial court instructed the jury that " '[c]ircumstantial evidence of an event is indirect evidence, that is, the testimony of the witnesses or evidence by exhibits as to the existence of certain facts or . . . other events from which . . . the jury may logically and reasonably conclude that the events in question did happen . . . . [W]ith circumstantial evidence the jury first has to determine the credibility of the witnesses and the exhibits and then decide whether the facts testified to do exist. Then they have to decide whether the happenings of those events or existence of those facts lead logically to the conclusion that other facts existed and/or other events occurred and ultimately that this crime was committed by the defendant.' "

[14] If this case fit the dichotomy of intent and identity instructions as discussed in *State* v. *Whelan*, supra, 200 Conn. 743, we would similarly hold that the charge should be examined as a whole because clearly the defense was lack of identification of the defendant as the victim's assailant, rather than lack of intent on the part of the shooter to cause the death of the victim.

example, the trial court asserted that "the state must prove beyond a reasonable doubt, first, that the defendant intended to cause the death of another person and, second, that in accordance with that intent the defendant caused the death of that person. . . .

"In order to convict Mr. Zaporta of murder you must first find that he caused the death of Ricardo Figueroa. You must find that proved to you beyond a reasonable doubt. You must also find proved beyond a reasonable doubt that Mr. Figueroa died as a result of the actions of Mr. Zaporta. . . .

"The state has the burden of proving beyond a reasonable doubt that the defendant was the perpetrator of this crime. . . ."

We are satisfied that the court's instructions, when read as a whole, did not dilute the state's burden of proof beyond a reasonable doubt. Consequently, the defendant has failed to satisfy the third prong of *Golding* because he was not clearly deprived of a fair trial.

Second, the defendant claims that the trial court undermined his constitutional right to the presumption of innocence and lessened the state's burden of proof beyond a reasonable doubt when it included in its charge to the jury that the presumption of innocence "is made to protect the innocent and not the guilty."[15]

"It is well established that the challenged jury instructions [similar to those in the present case]

---

[15] The trial court stated: "It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with crime by respecting the presumption of innocence which the law imputes to every person so charged and by making the state meet its burden of proving guilt beyond a reasonable doubt. But you must keep in mind that this rule of law is made to protect the innocent and not the guilty. If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it is the sworn duty of the jury to enforce the law and to render a verdict of guilty."

regarding the presumption of innocence and the burden of proof are the same or similar to jury instructions that previously have been approved . . . provided that these instructions, when considered in the context of the entire jury charge, do not undermine the presumption of innocence or dilute the burden of proof." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush,* 33 Conn. App. 253, 266–67, 635 A.2d 820 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994). *Bush* relied on the recent Supreme Court decisions *State* v. *Walton,* 227 Conn. 32, 63, 630 A.2d 990 (1993), and *State* v. *Stanley,* 223 Conn. 674, 695–96, 613 A.2d 788 (1992). Although the defendant directs our attention to *State* v. *Ellis,* 31 Conn. App. 923, 626 A.2d 1, cert. granted, 227 Conn. 902, 630 A.2d 73 (1993), where an issue similar to the one here was included among the issues that were granted certification by the Supreme Court, we refrain from acting to change the precedent in this area. Until the Supreme Court reverses itself on the issue, we must follow its precedent. *State* v. *Napoleon,* 12 Conn. App. 274, 282, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987); see also *O'Connor* v. *O'Connor,* 4 Conn. App. 19, 20, 492 A.2d 207 (1985), rev'd on other grounds, 201 Conn. 632, 519 A.2d 13 (1986). Looking at the charge as a whole, the trial court adequately conveyed to the jury the defendant's presumption of innocence and the state's burden of proof.

The judgment is affirmed.

In this opinion the other judges concurred.