## STATE OF CONNECTICUT *v.* JOSE W. ZAPORTA
(15179)

Peters, C. J., and Callahan, Borden, Berdon and Palmer, Js.

Argued February 15—officially released May 21, 1996

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, assistant state's attorney, for the appellee (state).

PALMER, J. The defendant, Jose W. Zaporta, was convicted after a jury trial of murder in violation of General Statutes § 53a-54a. He appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment of the trial court. *State* v. *Zaporta*, 36 Conn. App. 250, 650 A.2d 582 (1994). We granted the defendant's petition for certification to appeal limited to the following issues: (1) whether the Appellate Court properly upheld the trial court's refusal to permit the defendant to depose a witness pursuant to Practice Book § 791 (3);[1] and (2) if the trial court's

[1] Practice Book § 791 provides: "In any case involving an offense for which the punishment may be imprisonment for more than one year, the judicial authority, upon request of any party, may issue a subpoena for the appearance of any person at a designated time and place to give his or her deposition if such person's testimony may be required at trial and it appears to the judicial authority that such person:

"(1) Will, because of physical or mental illness or infirmity, be unable to be present to testify at any trial or hearing; or

"(2) Resides outside of this state, and his presence cannot be compelled under the provisions of Gen. Stats., § 54-82i; or

"(3) Will otherwise be unable to be present to testify at any trial or hearing; or

ruling was improper, whether the error was harmless. *State* v. *Zaporta*, 232 Conn. 906, 653 A.2d 194 (1995). Although we conclude that the Appellate Court adopted an unduly stringent standard for determining whether the judicial authority in a criminal case should order the appearance and deposition of a prospective witness prior to trial because of that witness' potential unavailability at trial, we nevertheless affirm the judgment of the Appellate Court.

The essential facts underlying the jury's verdict are set forth in the opinion of the Appellate Court. "On the night of August 30, 1991, the victim, Ricardo Figueroa, and his girlfriend, Frances Carrasquillo, stood outdoors [on the steps of the residence at 200 South Marshall Street in Hartford] talking with several people. The area was illuminated primarily by streetlights. Around 11 p.m., the defendant, with his hands in his pockets, swiftly approached the victim. When the defendant was about three feet away from the victim, he pulled out a gun and shot the victim in the head and the leg. The victim died as a result of his injuries."[2] *State* v. *Zaporta*, supra, 36 Conn. App. 251. On the basis of information provided to the police by three eyewitnesses to the crime, Vannon Shelton, Jessica Luna and Reggie Thomas, each of whom identified the defendant as the shooter, the defendant was arrested and charged with murder. The defendant was convicted as charged and

"(4) Is an expert who has examined a defendant pursuant to Secs. 757 through 760 and has failed to file a written report as provided by such section."

[2] The shooting apparently stemmed from a prior encounter between the defendant and the victim. As the Appellate Court noted, "[o]ne month earlier, the defendant, the victim, and a third person, Raymond Zukowski, had engaged in a fight outside the defendant's house. During this altercation, the defendant sliced Zukowski's temple with a knife. The victim and Zukowski retaliated by beating the defendant with golf clubs. As a result of this beating, the defendant was taken to the hospital. The defendant threatened to avenge his injuries." *State* v. *Zaporta*, supra, 36 Conn. App. 251–52.

sentenced to a term of imprisonment of thirty-three years.

On appeal to the Appellate Court, the defendant claimed that the trial court had improperly denied his motion to depose Carrasquillo, a witness to the shooting, pursuant to Practice Book § 791 (3). The Appellate Court rejected the defendant's contention, concluding that the trial court had not abused its discretion in denying the defendant's motion because "[t]he reasons provided by the [defendant for the deposition] were not sufficient to demonstrate any likelihood that Carrasquillo would be unable to testify at trial." Id., 257. The Appellate Court further concluded that § 791 (3) "requires the moving party to convince the court that the witness will be unable to testify at trial. The section does not require absolute certainty, but it requires a strong likelihood that the witness will be unable to testify. . . . The trial court must look at the totality of the circumstances to determine whether the moving party has met its burden." (Citation omitted.) Id.

On appeal to this court, the defendant claims, first, that the "strong likelihood" standard adopted by the Appellate Court is unreasonably exacting and, second, that the trial court's denial of his request to depose Carrasquillo constituted an abuse of discretion. We agree with the defendant that the "strong likelihood" test enunciated by the Appellate Court is too stringent. We need not determine whether the trial court properly denied the defendant's § 791 (3) motion, however, because we conclude that the trial court's failure to grant his request to depose Carrasquillo was harmless.

The following additional facts are necessary to our resolution of the certified issues. "Shortly after the murder, the police interviewed Carrasquillo, showing her three arrays of photographs, including one that contained a [photograph] of the defendant. When Carras-

quillo saw the defendant's photograph, she paused for a second or two before moving on to the next photograph. Carrasquillo did not identify the defendant, or anyone else, as the assailant.

"At the time of the defendant's probable cause hearing in October and November, 1991, Carrasquillo had moved from where she lived at the time of the shooting to a different location in Hartford. Although the state had difficulty locating her, the defendant, with the help of a private investigator, was able to discover Carrasquillo's whereabouts. Carrasquillo voluntarily attended the probable cause hearing. Because the trial court determined that her proposed testimony concerning her failure to identify a photograph of the defendant as the assailant would not be sufficient to rebut probable cause, the trial court denied the defendant's request to call Carrasquillo as a witness at the probable cause hearing in accordance with General Statutes § 54-46a.[3]

"[On] December [18,] 1991, the defendant filed a motion to preserve testimony of a material witness by means of a deposition. The defendant claimed that it was necessary to depose Carrasquillo because (1) she was a material witness who [had] failed to identify the defendant's [photograph] as the assailant's in a photographic array shown to her by the police and who, at the probable cause hearing, [had] told the defendant's counsel that the defendant was not the man who had shot the victim, (2) at the time of the probable cause

---

[3] General Statutes § 54-46a provides in relevant part: "(b) Unless waived by the accused person or extended by the court for good cause shown, such [probable cause] hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. . . . At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause. . . ."

hearing the state had difficulty locating her, (3) the defense found it necessary to hire a private investigator to locate her for the defendant's probable cause hearing, (4) she was a nervous fifteen year old, (5) she was two years older than the state's witnesses, (6) one state's witness had to be summoned by capias to appear at the probable cause hearing, (7) it was difficult to predict when the trial would take place, (8) it was generally difficult to find witnesses for this trial, and (9) unlike the testimony of the state's witnesses, there was no opportunity to preserve her testimony at the probable cause hearing." *State* v. *Zaporta*, supra, 36 Conn. App. 252–53.

After a hearing, the trial court, *Damiani, J.*, denied the defendant's motion to depose Carrasquillo, concluding that the defendant had not produced evidence sufficient to warrant a finding that Carrasquillo would be unavailable to testify at trial. In denying the motion, the trial court noted that the defendant's concerns regarding Carrasquillo's availability for trial "could be applied to every witness in a murder case and could turn every criminal trial into a series of minitrials." Id., 253. The trial court, however, expressed its willingness to reconsider its ruling if the defendant were able to provide additional support for his claim that Carrasquillo would be unavailable at the time of trial.[4]

"The trial took place almost a year after the motion to preserve testimony was filed. Carrasquillo did not testify. The state and the defendant stipulated to certain facts concerning Carrasquillo, which were reported to

---

[4] The trial court stated: "I'm going to deny your motion. . . . If you can come back to me with something to say that this young girl is leaving, or whatever—is going to be physically not within the state of Connecticut in the very near future. . . . The thing is, I would just say that if you can come within the third ground under section 791, that she'll be unable to be present to testify at any trial—bring that to my attention, and I'll order the deposition."

the jury. These were the detailed description of the assailant that Carrasquillo had provided to the police, and the facts that she did not know the defendant before the shooting, that a failed attempt to issue a subpoena to her had been made on the day before trial, that at the time of trial her whereabouts were unknown, and that neither the state nor the defendant was capable of producing her for trial. Further, the court gave the defendant leeway in questioning a police witness about Carrasquillo's statements and the state discussed in its closing argument Carrasquillo's failure to select the defendant's photograph from the array." Id., 253–54.

## I

We first turn to the defendant's claim regarding his burden of presenting sufficient evidence to satisfy the unavailability requirement of Practice Book § 791 (3).[5] We conclude that the party seeking to invoke § 791 (3) to preserve testimony must establish to the trial court's satisfaction that it is more likely than not that the witness will be unavailable at the time of trial.

At common law, a party in a criminal case had no right to depose a prospective witness, even upon proof that the witness was not likely to be available for trial. See, e.g., *Minder* v. *Georgia*, 183 U.S. 559, 562, 22 S. Ct. 224, 46 L. Ed. 328 (1902); *State ex rel. Hanagan* v. *Armijo*, 72 N.M. 50, 53, 380 P.2d 196 (1963); *Westry* v. *Commonwealth*, 206 Va. 508, 512, 144 S.E.2d 427 (1965). A majority of states, however, has promulgated statutes or rules providing for depositions in criminal cases upon a showing by the moving party that the deposition is necessary to preserve the testimony of a material wit-

---

[5] Because the proper construction of a Practice Book section involves a question of law, our review of the Appellate Court's determination is plenary. See *State* v. *Cook*, 183 Conn. 520, 521, 441 A.2d 41 (1981).

ness who will be unavailable at the time of trial.[6] In Connecticut, § 791 (3) authorizes the judicial authority, upon request of any party in a felony case, to "issue a subpoena for the appearance of any person at a designated time and place to give his or her deposition if such person's testimony may be required at trial and it appears to the judicial authority that such person . . . [w]ill . . . be unable to be present to testify at any trial or hearing." The issue before us is what standard of proof the moving party must satisfy to establish for purposes of § 791 (3) that the witness "[w]ill . . . be unable to be present to testify" at trial.

The defendant asserts that the "strong likelihood" standard adopted by the Appellate Court places too great a burden on the party seeking to depose a witness under § 791 (3) because, as a practical matter, it would preclude the preservation of testimony in many cases in which the moving party has reasonable grounds to believe that the witness will not appear at trial. The defendant further argues that because deposition testimony is not admissible in lieu of live testimony unless, at the time of trial, the moving party is able to establish that the witness is, in fact, unavailable, it is appropriate to set a less stringent standard for allowing depositions under § 791 (3) than that adopted by the Appellate Court.[7] Accordingly, the defendant urges a construction

---

[6] Depositions also may be taken in federal criminal proceedings under rule 15 of the Federal Rules of Criminal Procedure, which provides in relevant part: "(a) Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place. If a witness is detained pursuant to section 3144 of title 18, United States Code, the court on written motion of the witness and upon notice to the parties may direct that the witness' deposition be taken. After the deposition has been subscribed the court may discharge the witness. . . ."

[7] As the defendant acknowledges, deposition testimony obtained under § 791 is not admissible at any trial or hearing unless the moving party can

of § 791 (3) that would allow a party to depose a material witness upon a showing of a "reasonable probability" that the witness will be unavailable to testify at trial. The state, on the other hand, maintains that any standard other than the "strong likelihood" test adopted by the Appellate Court would permit a defendant to use § 791 (3) as a discovery tool,[8] which, the state claims, would add to the length and cost of pretrial proceedings and result in the harassment of prospective witnesses.

Both parties raise important policy considerations. As the defendant points out, " '[i]t would be unreasonable and undesirable to require [the moving party] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition.' " *United States* v. *Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993), quoting *United States* v. *Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985). Indeed, "the denial of a deposition may lead to the denial altogether of the testimony of a material witness, [which results in] a limitation on the trial's truthfinding function . . . ." *United States* v. *Ismaili*, 828 F.2d 153, 170 (3d Cir. 1987) (Becker, J., concurring and dissenting). We also recognize, however, the legitimacy of the state's concern that "[a]llowing depositions too freely would create the [risk] that parties would seek to use depositions as a discovery device in criminal cases . . . ." *United States* v. *Mann*, 590 F.2d 361, 365 (1st Cir. 1978); *In re United States*, 348 F.2d 624, 625 (1st Cir. 1965). This concern, moreover, is not totally alleviated by the fact that the prospective witness' deposition testimony is not admissible at trial unless the

demonstrate that he or she cannot secure the witness' testimony at the trial or hearing. See Practice Book §§ 793 and 803.

[8] In Connecticut, depositions for discovery purposes are not permitted in criminal cases. See Practice Book §§ 788 through 805; *State* v. *Darby*, 19 Conn. App. 445, 455, 563 A.2d 710, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989).

moving party can also demonstrate that he or she cannot secure the witness' trial testimony.

We are persuaded that a standard requiring the moving party to establish that it is more likely than not that the prospective witness will be unavailable at the time of trial strikes an appropriate balance between these competing considerations. This standard is not unduly burdensome because it does not require the moving party to demonstrate with certainty that the witness will be unavailable to testify at the time of trial. "When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony . . . . In that situation, justice usually will be served by allowing the moving party to take the deposition, thereby preserving the party's ability to utilize the testimony at trial, if necessary." *United States* v. *Drogoul*, supra, 1 F.3d 1552–53.

A less stringent test, however, would be incompatible with the mandate of § 791 (3) that the party seeking to take a deposition thereunder demonstrate that the witness "[w]ill . . . be unable to be present to testify at any trial or hearing." Moreover, because the moving party will be required to make a showing sufficient to establish that the witness is unlikely to be available at the time of trial, we are confident that trial courts will be able to ferret out any improper attempts to transform § 791 (3) into a tool for pretrial discovery. Accordingly, we conclude that a party seeking to depose a prospective witness under § 791 (3) must adduce evidence sufficient to satisfy the trial court that, in light of all of the relevant circumstances, it is more probable than not that the witness will not be available at the time of trial.

## II

The defendant next claims that the trial court's denial of his request to depose Carrasquillo constituted an

abuse of discretion entitling him to a new trial. The defendant also asserts that the trial court's alleged impropriety was so harmful that it deprived him of his constitutional right to present a defense. We need not reach the defendant's claim that the trial court improperly denied his request pursuant to § 791 (3) because we conclude that the defendant suffered no harm as a result of the trial court's denial of his motion.[9]

As previously noted, the defendant and the state entered into two stipulations regarding Carrasquillo, each of which was read to the jury. The first stipulation provided in relevant part that Carrasquillo had told Hartford police detective James Rovella that "the assailant, or the assailing person, was a Hispanic male, five foot nine to five foot eleven inches, thin build, long black curly hair, mustache, beard, in his thirties, [who] wore a black baseball cap, white tee shirt, black nylon jacket, black jeans, and black sneakers." The second stipulation provided that Carrasquillo "did not know [the defendant] either before or after the incident. . . . [D]espite the issuance of subpoenas to produce her whereabouts here at trial . . . [Carrasquillo's] present whereabouts are unknown, and . . . both sides have been incapable of producing her physical appearance." In addition, Rovella testified that Carrasquillo had viewed a photographic array that included a photograph of the defendant, and that she had been unable to iden-

_____

[9] We recognize that, under certain circumstances, a trial court's refusal to permit a defendant to depose a witness prior to trial because of his or her potential unavailability may infringe upon a defendant's constitutional right to present a defense. In this case, however, the state and the defendant stipulated to the facts to which Carrasquillo would have testified. We conclude, therefore, that the trial court's refusal to permit the defendant to depose Carrasquillo, even if wrongful, did not rise to the level of a constitutional violation. Because we find that any error in the trial court's denial of the defendant's motion was nonconstitutional in nature, the defendant bears the burden of demonstrating the harmfulness of the court's alleged error. *State* v. *Wilkes*, 236 Conn. 176, 188, 671 A.2d 1296 (1996).

tify any of the photographs as that of the shooter. Rovella also testified that Carrasquillo had told him that she had gotten a good look at the shooter as he approached and shot the victim.

Furthermore, the state, during closing argument, reviewed the stipulations and Rovella's account of his interview with Carrasquillo and expressly acknowledged that Carrasquillo had "in no uncertain words [stated] that she did not see or recognize the man who shot [the victim] in . . . [the photographic] array [shown to her by the police]." The defendant, in his closing argument, emphasized the importance of the stipulations: the fact that the perpetrator's identity was the key issue in the case; Carrasquillo's description of the shooter; and Carrasquillo's failure to select the defendant's photograph from the array.

The defendant contends that this evidence did not eliminate the harm that, he asserts, resulted from the trial court's denial of his request to depose Carrasquillo. In support of this contention, he maintains, first, that the jury might have found Carrasquillo's deposition testimony more credible or more persuasive than the statements contained in the stipulations. The defendant, however, has provided nothing to substantiate this assertion, and we are not aware of anything in the record to support it. We therefore reject the defendant's argument.

The defendant further argues that the stipulations were not an adequate substitute for the testimony that he claims he would have elicited from Carrasquillo had he been permitted to depose her. Specifically, the defendant points to Carrasquillo's statement to defense counsel, allegedly made after she had observed the defendant in court on the day of the probable cause hearing, that the defendant was not the shooter. There is no indication in the record, however, that the defendant

sought to obtain the state's agreement to stipulate to this alleged statement by Carrasquillo. Furthermore, the defendant did not raise a claim in the trial court that the stipulation was in any way incomplete or inadequate. Indeed, as far as can be gleaned from the record, the state agreed to stipulate to everything to which the defendant asked it to stipulate. Having failed to request that the state agree to the admission into evidence of Carrasquillo's alleged statement to defense counsel, the defendant cannot now be heard to complain that the stipulations were insufficient. Accordingly, the defendant has failed to demonstrate that he was harmed by the trial court's denial of his request to depose Carrasquillo under § 791 (3).

The judgment is affirmed.

In this opinion PETERS, C. J., and CALLAHAN and BORDEN, Js., concurred.

BERDON, J., concurring. I concur in the majority's opinion, but I am perplexed at its reluctance to apply the standard regarding the deposing of a potentially unavailable witness in a criminal case. For the sake of providing guidance to our trial courts, I believe it is important to apply that standard to the facts before us today. In this case, I would conclude that it was "more likely than not that [Frances Carrasquillo would] be unavailable at the time of trial." Accordingly, the trial court improperly denied the defendant's motion to depose Carrasquillo. I also conclude, however, that that denial was harmless error for the reasons set forth in the majority opinion.