STATE OF CONNECTICUT *v.* JAMES BUTLER
(AC 23371)

Schaller, West and Hennessy, Js.

---

[5] Because we conclude as we do, it is unnecessary to decide whether § 52-592 applies to probate appeals.

Argued October 29, 2003—officially released January 13, 2004

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John J. Davenport*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, James Butler, appeals from the judgments of conviction, rendered after a jury trial, of five counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and two counts of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4). On appeal, the defendant claims that the trial court improperly (1) refused to permit a defense witness to testify, (2) instructed the jury on circumstantial evidence and (3) invaded the province of the jury

in commenting on the admissibility of his statement to the police. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On October 16, 2000, the defendant and his accomplice, Charles Spells, entered the Mobil gasoline station on Watertown Avenue in Waterbury. Both men wore masks to conceal their identity, and the defendant also carried a shotgun. The men took $160 in cash, lottery tickets and the store clerk's watch. The defendant aimed the shotgun at a customer and dragged him into an aisle before he took the man's wallet. The defendant aimed the shotgun at another customer and forced her to the floor and demanded her money.

On October 20, 2000, the defendant and Spells entered the Cumberland Farms convenience store on Watertown Avenue in Waterbury. Both men were dressed in black, wore masks and the defendant carried a shotgun. The men took $400 from the cash register. Spells struck one customer with a blunt metal object and took the man's wallet. Another customer surrendered her car keys to the defendant and informed him that there was more than $300 in the vehicle. The two men took the keys and left in the vehicle.

Neither the customers nor the clerks could identify the perpetrators of the crime because the men were wearing masks. They, however, provided general descriptions of the men: Both were African-American, one was approximately six feet tall and the other was approximately five feet, seven inches tall. Those descriptions fit the defendant and Spells, respectively. The police found the customer's vehicle abandoned in a nearby parking lot and her purse on a nearby street. More than $300 in cash and a laptop computer were missing from the vehicle. The police also found a black mask that contained several strands of head hair in the vehicle.

On October 30, 2000, the defendant turned himself in to the Waterbury police department on an outstanding warrant. The defendant was interrogated, confessed to the crimes and implicated Spells as his accomplice.[1] In giving his statement to the police, the defendant provided details of the two crimes of which only a participant would have been aware. He knew where the customer's vehicle had been abandoned and told the police where the keys could be located. Utilizing the defendant's confession, the police found the keys. The defendant also stated that the car used in the Mobil gasoline station robbery belonged to Chiquita Diggs, the girlfriend of Spells. The defendant further confessed that after the robbery, Spells gave him $50, took the black mask and they went their separate ways. The police subsequently interviewed Diggs. Diggs informed the police of the location of the shotgun, which was recovered in Lakewood Lake. The defendant recanted his confession at trial.

## I

The defendant's first claim is that the court improperly refused to permit a defense witness to testify. Specifically, the defendant claims that the court abused its discretion when it excluded Diggs' testimony on the issue of third party guilt. We disagree.

The following additional facts are relevant to the defendant's claim. Diggs testified outside the presence of the jurors that she was staying at the home of Spells at the time of the October 16, 2000 robbery. Spells was armed with a shotgun when he entered the home. She testified that James Gardner and Levelle Kelly accompanied him. Spells was in possession of a laptop computer, a watch and a checkbook. Diggs also stated that after Spells was arrested, Gardner threatened her with a shot-

---

[1] Spells earlier had confessed to the crime and implicated the defendant as his accomplice.

gun to keep quiet and drove her to Lakewood Lake where he disposed of the shotgun. The court did not allow the defendant to present Diggs' testimony regarding the issue of third party guilt because her testimony did not establish a direct link to the robberies.

"Both this state and other jurisdictions have recognized that a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. . . . The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . . The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . . The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 564, 747 A.2d 487 (2000).

The court did not abuse its discretion in refusing to allow Diggs to testify on the issue of third party guilt. The testimony of Diggs merely would have corroborated the state's case. The testimony given by Diggs outside the presence of the jury was consistent with the defendant's confession. The defendant confessed that he had parted ways with Spells after the robbery and that Spells took the gun and mask, as well as the items stolen during the robbery. Diggs testified that Spells came home with the gun, mask and the items

stolen in the robbery. Furthermore, Diggs' testimony that Gardner and Kelly were with Spells around the time of the robberies and that Gardner threatened her with the shotgun before he threw it into the lake does not directly link either of them to the robberies. We conclude that none of Diggs' testimony was inconsistent with the defendant's guilt and was excluded properly. The court, therefore, did not abuse its discretion by refusing to admit Diggs' testimony on the issue of third party guilt.

## II

The defendant also claims that the court's instructions on circumstantial evidence and the presumption of innocence were improper. Specifically, the defendant argues that the court's instructions diluted the state's burden of proving him guilty beyond a reasonable doubt. We are not persuaded.

The claim arises from a portion of the court's instructions on circumstantial evidence that reads as follows: "Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of *reason, experience and common sense.* Now, in this case, as in all criminal prosecutions, the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt." (Emphasis added.) The court continued with its instruction and repeated, on no fewer than twenty-five separate occasions, that the state's burden of proof was proof beyond a reasonable doubt. Furthermore, the court specifically stated that if the jury does not "find that all of the elements, that means each and every one of the three, are proven beyond a reasonable doubt, your verdict must be not guilty."

Because the claim has not been preserved, the defendant asks us to examine the matter under the doctrine of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d

823 (1989).[2] We will review the defendant's claim because the first two prongs of *Golding* are satisfied. There is an adequate record for review, and "the right not to be convicted except by proof beyond a reasonable doubt is a constitutional right." (Internal quotation marks omitted.) *State* v. *Zaporta*, 36 Conn. App. 250, 264, 650 A.2d 582 (1994), aff'd, 237 Conn. 58, 676 A.2d 814 (1996).

We follow the rationale set forth in *State* v. *Zaporta*, supra, 36 Conn. App. 250, in which the defendant claimed that the court erroneously charged the jury on circumstantial evidence when it stated that "you must consider all of the evidence in light of reason, experience, and common sense . . . ." (Internal quotation marks omitted.) Id., 266. This court held that the statement "was not, in and of itself, erroneous." Id. This court further held that "[t]he instruction on circumstantial evidence given in this case did not suggest to the jury that the state's burden of proof was something less than beyond a reasonable doubt, but rather, gave no guidance as to the proper standard of proof." Id. This court in *Zaporta* specifically cited the fact that the trial court had repeated the state's burden of proof throughout the charge. Id., 267.

In this case, the defendant argues that the jury charge, "[t]herefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of *reason, experience and com-*

[2] Under *Golding*, a "defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

*mon sense,*" (emphasis added) is improper. Looking at the charge as a whole, we conclude that the court did not impermissibly dilute the state's burden of proof. The court stated throughout the instruction that the state's burden of proof was proof beyond a reasonable doubt. Furthermore, the court specifically stated that the defendant could not be found guilty unless each element of the crime was proven beyond a reasonable doubt by the state.

We are satisfied that the court's instructions, when read as a whole, did not dilute the state's burden of proof. Consequently, the defendant has failed to satisfy the third prong of *Golding* because he was not clearly deprived of a fair trial.

### III

The defendant's last claim is that the court improperly invaded the province of the jury when it commented on the admissibility of the defendant's confession. We disagree.

That claim arises from the following portion of the court's instruction: "This statement was held by the court to be admissible. That means you can consider it. Let me say to you that this ruling on my part meant no more than just that. And in the performance of my duty, I concluded that the circumstances surrounding the making of that statement were such that you could have that statement before you for your consideration. That is not my—*that is not meant to say that I endorse the reliability or truthfulness of the statement.* It is up to you, as the ultimate finders of fact, to make that determination based on all the evidence. I am just saying that it is something that you can hear, something that you will have with you in the deliberation room . . . . I'm not endorsing the reliability or the truthfulness of the statement. That is up to you to determine based on all of the evidence. That those are facts to be found by

the jury. Accordingly, my ruling is not to be taken by you as giving to that statement any more weight in your deliberations than you conclude it should have. It is totally up to you."[3] (Emphasis added.)

Because the claim has not been preserved, the defendant asks us to examine the matter under the doctrine of *State* v. *Golding*, supra, 213 Conn. 239–40. We will review the defendant's claim because the first two prongs of *Golding* are satisfied. There is an adequate record for review, and "[d]ue process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury . . . ." (Internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985).

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. . . . The trial court may, at

---

[3] The court clarified the charge as it related to the defendant's confession at the end of its instruction: "You recall that the state offered into evidence testimony as to a statement made out of court by the accused, which it claimed [was] in the nature of a confession or admission by him tending to show his guilt of the crimes charged. I held the statement to be admissible. Let me say to you, this ruling on my part meant no more than just that. In the performance of my duty, I concluded that the circumstances surrounding the making of that statement were such that you should have the statement before you for your consideration. [The] reliability or credibility of the confession or statement is a determination of fact to be determined by you. I simply determine that it is appropriate for you to take this statement into consideration. I'm not endorsing its reliability or its truthfulness. Again, that's up to you based on the evidence."

its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 68 Conn. App. 10, 17, 791 A.2d 581, cert. denied, 260 Conn. 909, 795 A.2d 547 (2002).

The defendant argues that by informing the jury of its decision to allow it to consider the confession in arriving at the verdict, the court somehow endorsed the confession as probative evidence. A review of the entire jury charge establishes that there is no reasonable possibility that the jury was misled by the court's instruction. The court specifically directed the jurors on numerous occasions throughout the charge that the reliability of the confession was a determination of fact to be made solely by them. The court stated that although it had admitted the confession into evidence, it did not endorse its reliability or truthfulness. Although we agree with the defendant that in this case, the court could have ended the problem by not commenting on the admissibility of the confession, we do not believe that it follows that the jury would have seen that as the court placing its imprimatur on the confession.

Reviewing the charge in its entirety, we conclude that the court did not unfairly comment on the evidence. The court repeatedly instructed that the jurors were the sole finders of fact, that every element of the crimes charged had to be proved beyond a reasonable doubt and that if the state failed to prove any element beyond a reasonable doubt, they should find the defendant not guilty. Accordingly, the court's instructions did not invade the province of the jury and, consequently, they did not unduly prejudice the defendant or deprive him of a fair trial.

The judgments are affirmed.

In this opinion the other judges concurred.